28 F.3d 1214
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Timothy D. O'DETTE, Defendant-Appellant.
 No. 93-1324.
 United States Court of Appeals, Sixth Circuit.
 June 23, 1994.
 
 Before NELSON and NORRIS, Circuit Judges, FORESTER, District Judge.*
 OPINION
 PER CURIAM.
 
 
 1
 Defendant, Timothy O'Dette, appeals his jury convictions for bank fraud and the sentence imposed. We affirm the convictions, but remand the case for resentencing.
 
 I.
 
 2
 Defendant is a self-employed businessman who has held a number of sales-related jobs and has also been employed as a finance manager at a car dealership. Alvin Thom is borderline mentally retarded and has a dependent personality disorder. He lives with his parents and is financially dependent on them. He is in his mid-thirties and has received most of his income in recent years from odd jobs and yard work.
 
 
 3
 Defendant and Thom met in 1988 and became friends. Between June and September 1991, they made a series of visits or phone calls to banks to fill out loan applications. All of the loan applications were made in Thom's name. His level of mental functioning makes it difficult for him to understand and fill out such forms. Several bank employees testified at trial that defendant supplied much of the information for the applications to Thom, frequently including the amount of Thom's income, which was substantially inflated. On several occasions, defendant represented that Thom was purchasing items from either himself or his stepson, which could be used as collateral for the loans.
 
 
 4
 Over the summer, Thom was approved for $24,000 in loans. When Thom received the loan proceeds checks, defendant would accompany him to cash the checks. Defendant would then take the money, giving Thom only small amounts of the loan proceeds. Although a few payments were made on several of the installment loans, all are in default and most have been written-off by the banks. Bank employees testified at trial that several later loan applications were denied because of Thom's bad credit record.
 
 
 5
 Thom applied for additional loans totaling $57,500, all of which were denied. Evidence at trial linked defendant to the applications for these loans as well.
 
 
 6
 Defendant was charged with ten counts of bank fraud under 18 U.S.C. Sec. 1344; he was convicted of all counts following a jury trial.
 
 II.
 
 7
 Defendant appeals his convictions, arguing that the district court erred when it denied his motion for acquittal pursuant to Federal Rule of Criminal Procedure 29. Because defendant failed to renew his motion for acquittal at the end of all the evidence, he has forfeited his right to challenge the sufficiency of the evidence. United States v. Faymore, 736 F.2d 328, 334 (6th Cir.), cert. denied, 469 U.S. 868 (1984). We therefore review his contention only to determine if his convictions amounted to a manifest miscarriage of justice.
 
 
 8
 After reviewing the record, we conclude the convictions are supported by sufficient evidence to rule out a manifest miscarriage of justice. Evidence was presented to the jury from which it could draw inferences supporting defendant's involvement in all ten of the loan applications, including the testimony of Thom, bank employees, and defendant's stepson.
 
 III.
 
 9
 Defendant appeals his sentence on four separate grounds: the assessment of aggravating role and special skills enhancements; an improper calculation of the amount of loss caused by defendant's conduct; and imposition of an upward departure.
 
 A. Aggravating Role
 
 10
 The district court enhanced defendant's sentence under U.S.S.G. Sec. 3B1.1(c) on the basis that he had played an aggravating role in the commission of the offenses.[1] Defendant argues this enhancement was improper because no other criminally culpable individual was involved in the fraud. The government contends that the enhancement was proper because Thom would have been criminally culpable had he been capable of forming the requisite mens rea.
 
 
 11
 In United States v. Carroll, 893 F.2d 1502, 1509 (6th Cir.1990), we held that Sec. 3B1.1(c) "requires that a defendant engage in criminal activity with at least one other criminally culpable person." We rejected a reading of Sec. 3B1.1(c) that
 
 
 12
 would permit enhancement where a single offender engaged in what could be considered an "otherwise extensive" criminal activity by the mere fact that the activity involved use of the services of several innocent people. We hold that enhancement pursuant to Sec. 3B1.1 requires the participation of at least two culpable individuals so that leadership of some criminal enterprise or organization, however minimal, can be claimed.
 
 
 13
 Id.; see also United States v. Kotoch, 954 F.2d 340, 342 (6th Cir.1992) (vacating Sec. 3B1.1(c) enhancement because defendant directed two innocent people to unknowingly violate the tax laws).
 
 
 14
 The government admits that Thom is not criminally culpable. No other person was involved in defendant's scheme to defraud the banks. Therefore, defendant's scheme did not involve at least two culpable individuals and the enhancement was improper.
 
 B. Special Skill
 
 15
 Defendant also contests the enhancement he received under U.S.S.G. Sec. 3B1.3, Abuse of Position of Trust or Use of Special Skill. The guideline states: "If the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels." U.S.S.G. Sec. 3B1.3. The commentary further states: " 'Special skill' refers to a skill not possessed by members of the general public and usually requiring substantial education, training, or licensing." U.S.S.G. Sec. 3B1.3, comment. (n. 2).
 
 
 16
 The district court found that defendant acquired special skills from his employment as the finance manager of a car dealership, and that the knowledge he gained from this position aided him in presenting false materials to the banks in a way that increased the likelihood that a decision would be made to make the loans. The district court also concluded that this type of intimate knowledge of the loan application process is not possessed by members of the general public.
 
 
 17
 We review a district court's factual findings under U.S.S.G. Sec. 3B1.3 for clear error. United States v. Moored, 997 F.2d 139, 144 (6th Cir.1993). There is evidence in the record to support the court's findings and the application of this guideline to defendant.
 
 C. Amount of Loss
 
 18
 Defendant next argues that the amount of loss inflicted or which he intended to inflict was miscalculated. Specifically, defendant argues that the district court counted multiple attempts to take out a single loan as separate loans, thereby inflating the intended loss.
 
 
 19
 We do not reach the merits of this issue because the amount defendant claims to have been double-counted,[2] even if deducted from the calculated amount of loss, would not change the guideline level.
 
 D. Upward Departure
 
 20
 Defendant appeals the trial court's upward departure of five months for the property damage his scheme caused to Thom's credit record. An upward departure is analyzed under a three-step process. First, the district court's conclusion that the case is sufficiently unusual to warrant departure is analyzed de novo. Second, we examine the case to ascertain that the circumstances warranting departure actually exist. Third, we measure the degree of departure for reasonableness. United States v. Rodriguez, 882 F.2d 1059, 1067 (6th Cir.1989), cert. denied, 493 U.S. 1084 (1990).
 
 
 21
 Although the government did not present direct proof that Thom's ability to obtain credit had been damaged, there was more than enough evidence at trial to support such a conclusion. This evidence includes the fact that a number of the loans, all in Thom's name, had been charged off as uncollectible by the banks and that, by the end of defendant's scheme, Thom's loan applications were being denied because of his unfavorable credit record.
 
 
 22
 The departure also appears to be warranted and reasonable under the Rodriguez analysis. The guidelines specifically authorize an upward departure where property damage not taken into account by the guidelines occurs. U.S.S.G. Sec. 5K2.5. Defendant was convicted under the bank fraud statute, 18 U.S.C. Sec. 1344, and the fraud guidelines are directed at punishment for loss suffered by the banks, not to an innocent third party whose credit is adversely impacted by the fraud. The type of damage Thom received to his credit record, which the district court persuasively defined as a property interest, warrants a departure in this case. The departure is also reasonable, as the five months is equivalent to either a one-level increase in offense level or criminal history category, the lowest possible increase.
 
 IV.
 
 23
 Defendant's convictions are affirmed on all counts. His sentence is vacated due to the erroneous inclusion of the aggravating role adjustment, and this cause is remanded to the district court for resentencing in conformity with this opinion.
 
 
 
 *
 The Honorable Karl S. Forester, United States District Judge for the Eastern District of Kentucky, sitting by designation
 
 
 [1]
 "If the defendant was an organizer, leader, manager, or supervisor in any criminal activity ... increase by 2 levels." U.S.S.G. Sec. 3B1.1(c)
 
 
 [2]
 At oral argument, defense counsel conceded this amount to be $7,300. The district court based the sentence on an intended loss of $81,500, resulting in a six-level increase to the base offense level for fraud and deceit. See U.S.S.G. Sec. 2F1.1(b)(1)(G). When the $7,300 is deducted, the intended loss is $74,200, which also results in a six-level increase under Sec. 2F1.1(b)(1)(G)