**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Paul Stephen GANDY, Defendant–Appellant.**

No. 94–8003.

United States Court of Appeals, Tenth Circuit.

Sept. 15, 1994.

Lisa D. Leschuck, Asst. U.S. Atty. (David D. Freudenthal, U.S. Atty., Aleksander D. Radich, Asst. U.S. Atty., with her on the brief), Cheyenne, WY, for plaintiff-appellee.

James H. Barrett, Asst. Federal Public Defender (Michael G. Katz, Federal Public Defender for Colo./Wyo., Michael R. O'Donnell, Asst. Federal Public Defender, with him on the brief), Cheyenne, WY, for defendant-appellant.

Before BALDOCK, BRORBY, and HENRY, Circuit Judges.

BALDOCK, Circuit Judge.

Defendant Paul Stephen Gandy appeals his sentence for falsifying health insurance claim forms, 18 U.S.C. § 1001. We have jurisdiction under 18 U.S.C. § 3742.

Between July 1989 and March 1990, Defendant was licensed as a podiatrist, living in Lander, Wyoming. During this time, Defendant had no formal office and thus would visit various nursing homes and senior centers and offer his services to their residents. On these visits, Defendant performed for the patients a variety of foot care services, usually routine in nature, such as toenail clipping. Subsequently, Defendant would submit claim forms to the Medicare program so that he could receive compensation for his services. However, Defendant knew Medicare would not reimburse him for routine foot care services. Thus he would falsely state on the forms that he had performed various reimbursable surgical procedures. The total amount "allowed" by Medicare for Defendant's fraudulent billings was $27,312.67, of which he received $18,315.87.

Defendant admitted his fraudulent conduct during an investigation into his activities by the Federal Bureau of Investigation and the Department of Health and Human Services. In March 1993, Defendant was charged by superseding indictment with seven counts of submitting false claim forms, 18 U.S.C. § 1001. Pursuant to a plea agreement, Defendant pleaded guilty to count one, and the remaining counts were dismissed.

Prior to sentencing, the United States Probation Office prepared a presentence report. The report indicated, *inter alia*, that Defendant qualified for a two-level sentence enhancement under U.S.S.G. § 3B1.3 because Defendant "used a special skill, in a manner that significantly facilitated the commission ... of the offense." Defendant objected to this finding and put the government to its burden of proving the enhancement. *See United States v. Kirk,* 894 F.2d 1162, 1164 (10th Cir.1990) (prosecution has burden to prove sentence enhancement by preponderance of the evidence). Following a hearing, the district court overruled Defendant's objection and concluded the enhancement was warranted. Moreover, the court adopted the presentence report's sentencing calculations [1] and sentenced Defendant to twenty-one months imprisonment, to be followed by three years of supervised release. This appeal followed.

On appeal, Defendant's sole contention is that the district court erred in applying U.S.S.G. § 3B1.3 to enhance his sentence by two-levels. Contrary to the district court's finding, Defendant contends he did not use his podiatric skill to facilitate the commission of his offense—*i.e.,* the filing of false claim forms to Medicare. We review the district court's factual findings that Defendant possessed a special skill and that he used that special skill to facilitate the commission of his offense, for clear error. *United States v. Lambert,* 995 F.2d 1006, 1008 (10th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 333, 126 L.Ed.2d 278 (1993).

■ Under the provisions of U.S.S.G. § 3B1.3, a defendant's sentence is increased two levels if he "use[s] a special skill, in a manner that significantly facilitate[s] the commission or concealment of the offense." *Id.* "Special skill" is defined in Application note 2 in the Commentary to § 3B1.3 as "a

skill not possessed by members of the general public . and usually requiring substantial education, training or licensing." U.S.S.G. § 3B1.3, Application n. 2. Although "facilitate" is not defined in the Guideline or Application note, at least one court has defined facilitate as "to make easier." *See United States v. Young,* 932 F.2d 1510, 1513 (D.C.Cir.1991) (*citing Webster's New Collegiate Dictionary* (1977)). Thus, before a sentencing court may properly enhance the defendant's sentence under § 3B1.3, it must find that the defendant: (1) possessed a special skill; and (2) used that special skill to significantly facilitate—*i.e.,* make easier—the commission or concealment of the offense.

■ Under the first part of § 3B1.3, the government must show that the defendant possessed a special skill. We learn from U.S.S.G. § 3B1.3, Application note 2 that a defendant's special skill may be derived from "substantial education, training or licensing." *See* U.S.S.G. § 3B1.3, Application n. 2. Application note 2 in the Commentary following § 3B1.3 provides specifically that "pilots, lawyers, doctors, accountants, chemists, and demolition experts" possess a special skill. *Id.* We also recognize that a defendant need not have completed formalized educational or licensing requirements in order to possess a special skill. Rather, a defendant's special skill can also be derived from experience or from self-teaching. *See United States v. O'Dette,* 28 F.3d 1214, 1994 WL 284102, at *2, (6th Cir.1994) (defendant's experience as a finance manager for a car dealership allowed him to acquire specialized knowledge of loan procedures, thereby enabling him to obtain a loan by submitting false information to a bank); *United States v. Aubin,* 961 F.2d 980, 984 (1st Cir.1992) (defendant's electronic skills acquired from experience and training

---

1. The report determined Defendant's base offense level was 6. *See* U.S.S.G. § 2F1.1. With a four-level increase for an intended loss of $27,- 312.67, *see* U.S.S.G. § 2F1.1(b)(1)(E), a two-level increase for more than minimal planning, *see* U.S.S.G. § 2F1.1(b)(2)(A), an additional two-level increase for use of a special skill, *see* U.S.S.G.

§ 3B1.3, and a two-level decrease for acceptance of responsibility, *see* U.S.S.G. § 3E1.1, Defendant's final offense level was determined to be 12. With an offense level of 12 and criminal history category III, Defendant's sentencing range was computed to be fifteen to twenty-one months.

as an ATM service repair man enabled him to rob an ATM machine), *cert. denied,* —— U.S. ——, 113 S.Ct. 248, 121 L.Ed.2d 180 (1992); *United States v. Fairchild,* 940 F.2d 261, 266 (7th Cir.1991) (defendant's self-taught knowledge of chemistry enabled him to manufacture methamphetamine).

■ However, the mere fact that a defendant possesses a special skill is not enough to warrant his sentence being enhanced under Guideline 3B1.3. *Cf. United States v. Gould,* 983 F.2d 92, 94 (7th Cir.1993) (fact that defendant was a police officer did not automatically warrant an enhancement under § 3B1.3 for abuse of trust; still had to be shown that the officer used his skill to facilitate the commission of his offense). Rather, the government must show and the court must find, under the second part of § 3B1.3, that the defendant used his special skill to significantly facilitate the commission or concealment of his offense. A defendant "uses" his special skill if he employs that skill to facilitate the commission of his offense. *See, e.g., Aubin,* 961 F.2d at 984 (defendant uses his electronic skills as an ATM service repairman to rob an ATM machine—skills used to gain access to the ATM machine, deactivate its alarm system, and locate and obtain the stored money in the machine); *United States v. Fritzson,* 979 F.2d 21, 22–23 (4th Cir.1992) (defendant uses his accounting skills to file false income tax returns); *Fairchild,* 940 F.2d at 266 (7th Cir.1991) (defendant uses his knowledge of chemistry to manufacture methamphetamine); *United States v. Culver,* 929 F.2d 389, 393 (8th Cir. 1991) (defendant uses his skills as a pilot to "plan for fuel, devise flight paths, and to prepare [a stolen] aircraft for flight" in order to facilitate a conspiracy to transport a stolen plane).

If the government does not show that the defendant employed his skill to facilitate the commission of his offense, then the court may not properly enhance the defendant's sentence under § 3B1.3. *See, e.g., United*

*States v. Garfinkel,* 29 F.3d 1253 (8th Cir. 1994) (court refuses to enhance defendant's sentence finding defendant did not use his psychiatrist skills to submit false statements to the government; defendant had ordered subordinate to submit false records to the Food and Drug Administration; court concludes defendant used his managerial skills, not his psychiatric skills to commit his offense); *United States v. Hickman,* 991 F.2d 1110, 1111 (3rd Cir.1993) (court reverses defendant's sentence enhancement finding he did not use his skills as a building contractor to facilitate a "garden variety fraud;" defendant simply failed to build a house he had contracted to build and falsely assured the purchasers that the house was being built).

■ Applying § 3B1.3 to the instant case, we first note that the fact that Defendant possessed a special skill—podiatry—is undisputed. Secondly, the district court concluded Defendant had used his podiatric skill to facilitate the commission of his offense—*i.e.,* submission of false claim forms to Medicare. The district court stated as its finding:

> With regard to the special skill, I apprehend the defendant's argument that his skills weren't really specially used, that this was just a garden variety fraud, and that's a unique argument, but I really think that the applicable guideline on these special skills really intended enhancement for just such cases as this. I think this comes within the guideline exactly. *He used his podiatric skill to defraud the United States. If he hadn't had it no fraud could have been committed by him.*

Tr.Vol. IV, pg. 12 (emphasis added). Because Defendant possessed a special skill and because the court found he used that special skill to facilitate the commission of his offense, the court enhanced Defendant's sentence by two-levels pursuant to § 3B1.3.

Despite our consideration of the court's finding and our careful review of the record, we simply cannot determine whether Defendant did in fact use his podiatric skill to facilitate the commission of his offense. Al-

though the district court made a finding, the court's finding is merely a conclusion and does not specifically explain how Defendant used his podiatric skill—*i.e.*, such as if Defendant had used his diagnostic skills as a podiatrist in some way to falsify the claim forms and the operative reports.[2] Moreover, nothing in the record provides us with a specific explanation of how Defendant used his podiatric skill.[3] As a result, we are unable to review the court's factual determination. Consequently, we must remand with directions to the district court to make further findings on how Defendant used his podiatric skill to significantly facilitate the commission of his offense.

REMANDED for further factual findings consistent with this opinion.

2. We note that the court's finding is problematic for another reason. The court's statement that "[i]f [Defendant] hadn't had [his skill] no fraud could have been committed by him," seems to suggest that because Defendant is a podiatrist, *a fortiori* he used his special skill in the commission of his offense. As we have already explained, however, it must be shown not only that Defendant possessed a special skill, but also that he employed that special skill to facilitate the commission of his offense.

3. Counsel for the government contended at oral argument that the claim forms and "operative reports" falsified by Defendant explained how Defendant used his podiatric skill. Moreover, counsel asserted these documents were "incorporated" into the record through the superseding indictment. However, neither the claim forms nor the operative reports themselves were made a part of the record and thus we have no way of knowing what they might have shown.