UNITED STATES of America,
Plaintiff–Appellee,

v.

Jerry V. RICE, Defendant–Appellant.

No. 94–2154.

United States Court of Appeals,
Tenth Circuit.

April 4, 1995.

Peter Schoenburg of Rothstein, Donatelli, Hughes, Dahlstrom, Cron & Schoenburg, Albuquerque, NM, for defendant-appellant.

Paula G. Burnett, Asst. U.S. Atty. (John J. Kelly, U.S. Atty., with her on the briefs), Albuquerque, NM, for plaintiff-appellee.

Before MOORE, ALDISERT,* and BALDOCK, Circuit Judges.

JOHN P. MOORE, Circuit Judge.

Jerry Rice was convicted of two counts of making a false claim for an income tax refund in violation of 18 U.S.C. § 287 and three counts of making and subscribing a false income tax return in violation of 26 U.S.C. § 7206(1). Although Mr. Rice presents several matters for review, we affirm on the substantive issues but remand for resentencing.

According to the government, Mr. Rice, a certified public accountant, was the perpetrator of a complicated scheme of tax fraud involving several Subchapter S Corporations he established. Under federal income tax law, S Corporations are not required to file or pay taxes as corporate entities. Income and losses are chronicled on the S Corporation's shareholders' individual tax returns. However, such entities still must file a quarterly statement concerning their employees' withholding and an annual unemployment tax return (Forms 941 and 940 respectively). S

---

* The Honorable Ruggero J. Aldisert, Senior Judge for the United States Court of Appeals for the Third Circuit, sitting by designation.

Corporations, like other employers, must also remit the money withheld from their employees' paychecks to the Social Security Administration. The Internal Revenue Service keeps track of all the transactions from each account based on the corporation's Employer Identification Number (EIN).

During the tax years 1987, 1988, and 1989, Mr. Rice claimed on his Form 1040 Individual Tax Return that more money had been withheld by his employer than he owed in taxes. He received refunds from the IRS totaling $29,922.00.

During these three years, Mr. Rice was employed by Jerry V. Rice, CPA–PC, and Rice and Associates, CPA–PC, two S Corporations he controlled. As corporate president, Mr. Rice was responsible for filling out his own W–2 Forms along with those of all the corporate employees. IRS records indicated the S Corporations had submitted neither the required employee withholding forms nor the money withheld from their employees during the three years in question. The IRS believed Mr. Rice committed fraud because he received a tax refund based on excessive withholding that was never in fact withheld.

The investigation of Mr. Rice began in September 1990 with a routine audit of Southwestern Investments, Inc., another of his S Corporations. The IRS issued three summons to Mr. Rice requesting he appear before the agency and produce specified corporate documents. After Mr. Rice refused, the IRS initiated contempt proceedings to force him to comply. At the subsequent contempt hearing, the district court rejected each of Mr. Rice's grounds for failing to comply with the summonses, including his claim he did not have to comply because of his personal Fifth Amendment privilege. The indictment, trial, and conviction followed.

Mr. Rice raises three issues on appeal. First, he claims the government improperly was allowed to admit evidence at trial concerning his prior assertion of his Fifth Amendment privilege at the contempt hearing. Second, he argues the district court erred by not allowing his expert witness to testify. Third, Mr. Rice asserts the court made several errors in applying the sentencing guidelines.

■ Defendant's Fifth Amendment claim arises because during the government's questioning of Charles Duffy, an attorney in the Tax Division of the Department of Justice, Mr. Duffy stated:

I requested the Court to enforce the summons. In other words, I requested the Court to order Mr. Rice to appear and comply with the summons and produce the documents and give testimony. In response to the motion or petition to enforce, Mr. Rice raised various grounds supporting his contention that he should not have to comply with the three summons.

And those grounds—and I think there's five, six, seven or eight of them, include enforcement would violate his Fourth Amendment right, enforcement would violate his Fifth Amendment right.

Mr. Rice neither objected to Mr. Duffy's statement nor requested a curative instruction at any time.[1]

■ Because no objection asserting a violation of the defendant's Fifth Amendment self-incrimination privilege was raised at trial, we review this issue for plain error. *United States v. Hager*, 969 F.2d 883, 890 (10th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 437, 121 L.Ed.2d 357 (1992). To succeed in this claim, Mr. Rice must demonstrate the comments of the government's witness rise to the level of fundamental error. "Plain error is 'fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done.' " *Id.* at 890 (quoting *United States v. Henning*, 906 F.2d 1392, 1397 (10th Cir.1990), *cert. denied,* 498 U.S. 1069, 111 S.Ct. 789, 112 L.Ed.2d 852 (1991)).

We note initially, the assertion of error here is quite unusual because it is predicated upon an invalid exercise of the self-incrimination privilege. As the district court held in

---

**1.** Prior to Mr. Duffy's testimony, the defense raised an objection on the grounds of materiality. No other objection was asserted.

the civil contempt hearing, Mr. Rice could not properly invoke the privilege in this case because no corporation possesses such a right. *United States v. Hansen Niederhauser Co.*, 522 F.2d 1037, 1039 (10th Cir.1975). This limitation extends to S Corporations. *Id.* Moreover, none of the authority cited to us addresses the issue of the propriety of prosecutorial comment on the exercise of a nonexistent privilege.

We do not have to reach the issue of propriety, however, because Mr. Rice is attempting to force his case into a box where it does not fit. Although it is a hoary rule that the prosecution cannot comment at trial on a defendant's post-*Miranda* decision to remain silent, *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the rule is predicated upon the principle that allowing the prosecution to impeach a defendant's trial testimony with his post-*Miranda* silence would penalize the exercise of his Fifth Amendment privilege. The Court offered two central reasons in support of this holding. First, it postulated, "every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested." *Id.* at 617, 96 S.Ct. at 2244. The defendant's silence may simply have occurred in response to the *Miranda* warnings and in no way indicates his guilt. Second, the Court believed that implicit in the *Miranda* warnings was the notion that their exercise "will carry no penalty." *Id.* at 618, 96 S.Ct. at 2245. This rule has been extended to apply to pre-arrest silence, *United States v. Burson*, 952 F.2d 1196, 1200–01 (10th Cir.1991), *cert. denied*, 503 U.S. 997, 112 S.Ct. 1702, 118 L.Ed.2d 411 (1992), with the exception that pre-arrest silence may be used for impeachment purposes. *United States v. Chimal*, 976 F.2d 608, 611 (10th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1331, 122 L.Ed.2d 715 (1993); *Jenkins v. Anderson*, 447 U.S. 231, 238–40, 100 S.Ct. 2124, 2129–30, 65 L.Ed.2d 86 (1980).

Mr. Rice would like this rule extended still further. He attempted to invoke the privilege initially during an administrative proceeding and later during a civil enforcement action. The district court found the privilege did not apply. Now, Mr. Rice argues the

government cannot describe what occurred at the civil contempt hearing—or at least not that he tried to invoke his Fifth Amendment privilege. The argument is without a rational basis.

Mr. Rice's attempt to invoke the privilege was unsuccessful because it was nonexistent. In *Doyle*, *Burson*, and the other typical cases in this area, the defendant has successfully remained silent. The government attempted to either attach a reason why the defendant chose to remain silent, or contended, if the story given at trial were true, the defendant would not have remained silent. In both circumstances, the government's gambit was to use the defendant's decision to remain silent to its advantage. This case is qualitatively different.

Here, the government attempted to demonstrate Mr. Rice's theory of what happened was of recent fabrication. Mr. Rice argued he sent the necessary forms to the IRS with an incorrect EIN, and the IRS subsequently lost them.

The government contested this evidence on two grounds. First, it introduced testimony of IRS internal procedures designed to prevent just such an occurrence. Second, the government put forth evidence Mr. Rice was previously ordered to produce all relevant documents, which would necessarily include the documents he was using to support his version of the events at trial. IRS Agent Robert Tarin testified Mr. Rice told him he had complied with this order. The government was not taking undue advantage of Mr. Rice's silence; it was instead informing the jury that either Mr. Rice recently came up with his explanation, or he originally failed to produce all the relevant documents. We see no error in this instance.

■ Mr. Rice next argues the district court erred in refusing to admit the testimony of one of his experts. Mr. Rice sought to have James J. Everett, formerly employed as an attorney in the Tax Division of the Department of Justice and the Internal Revenue Service, testify as an expert witness. Requested to make an offer of proof, Mr. Rice's counsel indicated Mr. Everett would testify that as a former prosecutor, he would not have filed a case against Mr. Rice based

on the evidence the government had in its possession. Additionally, he would state had Mr. Rice failed to file in 1987, "a flag would have gone up right then." The significance of this statement would have been that because no "flag" went up, Mr. Rice must have filed as he claimed. Finally, counsel represented Mr. Everett would testify "in his experience [this case] seems to be replete with error, mistake, confusion and certainly not enough evidence for a jury to convict a man beyond a reasonable doubt."

The court refused to qualify Mr. Everett as an expert, stating: "I find that there's absolutely nothing that your expert could provide to the Court under Rule 702." The court added, "I will reject your request that your expert testimy [sic] in this case, consistent with the proffer made by [counsel]." Although not clear because of the error in transcription, we read this ruling simply as a refusal to allow Mr. Everett to express opinions as an expert, and not as a flat refusal to permit him to take the stand.

■ This court reviews the trial court's determination of whether expert testimony should be admitted under the abuse of discretion standard. *United States v. Esch,* 832 F.2d 531, 535 (10th Cir.1987), *cert. denied,* 485 U.S. 908, 108 S.Ct. 1084, 99 L.Ed.2d 242 (1988). Federal Rules of Evidence 702 provides the applicable standard:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

In discussing this rule, the advisory committee noted:

> Whether the situation is a proper one for the use of expert testimony is to be determined on the basis of assisting the trier. "There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a special-

ized understanding of the subject involved in the dispute."

(citation omitted). *See also Specht v. Jensen,* 853 F.2d 805 (10th Cir.1988) (en banc), *cert. denied,* 488 U.S. 1008, 109 S.Ct. 792, 102 L.Ed.2d 783 (1989), and 3 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence* ¶ 702[10] (1985).

In its most recent pronouncement on this rule, the Supreme Court noted, under Rule 702, the inquiry of whether expert testimony will assist the trier of fact is essentially a question of relevance. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* — U.S. —, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) (addressing the relationship of Rule 702 and the "general acceptance" test for scientific evidence from *Frye v. United States,* 293 F. 1013 (D.C.Cir.1923)). Like all evidentiary issues, the trial court has wide discretion in making these determinations.

Applying the appropriate tests, we conclude Mr. Everett was really not called upon to supply specialized knowledge but to speculate and hypothesize. Traditionally, hypothesis may be an appropriate subject for expert testimony when based upon conclusions from established evidentiary facts, but here Mr. Everett's testimony was to be based entirely on pure surmise.

■ Moreover, whether Mr. Everett thought the evidence justified the filing of charges is irrelevant. Guided by proper instructions, the sufficiency of the evidence is for the jury to decide from the facts established at trial. Mr. Everett's notions of prosecutorial filing discretion have no bearing upon the ultimate jury question. Moreover, he could have testified from his personal observations that the IRS had employed a procedure to "flag" certain cases, or that files were sometimes lost; but this is not the stuff of expert opinion. Thus, we believe the trial court properly disallowed his testimony under Rule 702.

■ Mr. Rice makes four separate challenges to the district court's application of the United States Sentencing Guidelines. First, he argues the district court incorrectly imposed the burden of proof on him on a sentencing enhancement issue. The Presentence Report recommended increasing the base offense level of six by five levels based

on a finding that Mr. Rice defrauded the government of $41,189.00. The Presentence Report states:

> The defendant evaded or attempted to evade a minimum of $11,267.00 in federal income tax and further falsified income tax credits, resulting in a fraudulent refund being submitted to the defendant in the amount of $29,922.00. Accordingly, a total loss of $41,189.00 is considered as the loss.

At trial, the government proved Mr. Rice received three refunds totaling $29,922.00. There was no evidence introduced, however, concerning any tax loss suffered by the government as a result of the defendant's evasion or receipt of the fraudulent refunds. As a result, unlike in *United States v. Hershberger*, 962 F.2d 1548, 1555–56 (10th Cir.1992), the sentencing court could not rely upon testimony it heard at trial to determine this issue.

Mr. Rice argues the burden of proof for sentencing enhancements lies with the government. "The government shall bear the burden of proof for sentence increases and the defendant shall bear the burden of proof for sentence decreases. This rule requires neither party to prove the negative of a proposition." *United States v. Kirk*, 894 F.2d 1162, 1164 (10th Cir.1990); *see also United States v. Abud–Sanchez*, 973 F.2d 835, 838 (10th Cir.1992). At the evidentiary hearing scheduled after Mr. Rice objected to the Presentence Report, the district court failed to apply this rule, stating instead:

> I agree with Ms. Burnett, Mr. McIntyre. You're the one that took issue with the pre-sentence report, so I assume that you have proof to establish what you contend is an inaccuracy in the presentence report, so you will go forward.

Mr. Rice's counsel then attempted to demonstrate that the tax loss never had been established. The court eventually adopted the amount of loss from the Presentence Report which included the $11,267.00 minimum tax loss figure.

The government argues Mr. Rice did not have the burden of proof improperly placed on him. No tax loss adjudication was neces-

sary, the government contends, because the "district court is empowered to make a reasonable estimate of loss attributable to fraud." *United States v. McAlpine*, 32 F.3d 484, 488 (10th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 610, 130 L.Ed.2d 520 (1994).

■ This court reviews the district court's legal interpretation of the sentencing guidelines de novo. *United States v. Lowder*, 5 F.3d 467, 470 (10th Cir.1993). Mr. Rice correctly notes that the government bears the burden of proof for sentence increases, while the defendant bears the burden of proof for sentence decreases. *Kirk*, 894 F.2d at 1164. The sentencing guideline for crimes involving fraud and deceit, U.S.S.G. § 2F1.1(a), contemplates a base offense level of six. This level may be adjusted upward depending on the amount of the loss involved. U.S.S.G. §§ 2F1.1(b)(1)(A)–(S). This is a sentencing increase within the meaning of *Kirk*, so the government bears the burden of proof. "Clearly, the government has the burden to prove the amount of loss by a preponderance of the evidence." *McAlpine*, 32 F.3d at 487; *see also United States v. Reddeck*, 22 F.3d 1504, 1512 (10th Cir.1994); *United States v. Smith*, 951 F.2d 1164, 1168 (10th Cir.1991). The district court's response during the evidentiary hearing before sentencing indicates the court incorrectly placed the burden on Mr. Rice to contest the government's loss amount.

In addition, no evidence was introduced concerning the amount of taxes Mr. Rice may have avoided. The first calculation of this figure was made in the Presentence Report, which was later adopted by the court. The court simply found, "[t]he total loss to the Government, including the minimum taxable income evaded by the defendant was $41,189.00." This contested conclusion was not founded upon proof by a preponderance of evidence. While the government does not have to prove the amount of loss exactly under § 2F1.1(b)(1), it does have the burden of supporting a sentencing increase.

■ Second, Mr. Rice argues the district court relied on improper grounds in enhancing his sentence by two levels because of the "sophisticated means" used in committing his crime. U.S.S.G. § 2T1.3(b)(2). He argues both the case law and the commentary to the sentencing guidelines require a greater degree of sophistication and intricacy than oc-

curred in this case. *United States v. Ford,* 989 F.2d 347 (9th Cir.1993); *United States v. Becker,* 965 F.2d 383 (7th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 1411, 122 L.Ed.2d 783 (1993). Additionally, Mr. Rice contends his sentence was enhanced under the sophisticated means rubric in part because he contested the IRS' ability to require him to produce documents during the civil phase of his case. Mr. Rice argues it is improper to consider his use of the court system as a basis for enhancement under the sophisticated means or any other guidelines' provision. U.S.S.G. § 3C1.1, comment.

▋ This court accepts the district court's factual findings unless clearly erroneous and gives due deference to the sentencing court's application of the guidelines to the facts of a particular case. *United States v. Johnson,* 911 F.2d 403, 406 (10th Cir.1990), *cert. denied,* 498 U.S. 1103, 111 S.Ct. 1004, 112 L.Ed.2d 1087 (1991); *Lowder,* 5 F.3d at 470. The 1989 edition of the Guideline's Manual was used in this case because the offenses occurred between March 26, 1988, and March 19, 1990. Both the sophisticated means enhancement under § 2T1.3(b)(2) and the more than minimal planning enhancement under § 2F1.1(b)(2)(A) are relevant. The Presentence Report applied § 3D1.3, the closely-related counts provision. This section requires closely-related offenses to be grouped together. In this case, Counts I and II (False Claims for Refund) were grouped together, as were Counts III, IV and V (Fraud and False Statement under Penalty of Perjury). Section 3D1.3(b) requires, "[w]hen the counts involve offenses of the same general type to which different guidelines apply (*e.g.,* theft and fraud), apply the offense guideline that produces the highest offense level." The Presentence Report calculated the offense level under both § 2T1.1 (Tax Evasion) and § 2F1.1 (Fraud or Deceit). Each calculation resulted in an offense level of seventeen, and Mr. Rice was sentenced accordingly.

The commentary to § 2T1.3(b)(2) defines "sophisticated means" as:

> conduct that is more complex or demonstrates greater intricacy or planning than a routine tax-evasion case. An enhancement would be applied, for example, where the

defendant used offshore bank accounts or transactions through corporate shells.

This court has yet to address this issue.

In *Ford,* the Ninth Circuit concluded that a scheme using a Canadian corporation to generate corporate foreign tax payments, which were then claimed on a domestic return as foreign tax credits, fell within the definition. *Ford,* 989 F.2d at 351. Similarly, in *Becker,* 965 F.2d at 390–91, the court approved an enhancement for a complicated tax evasion scheme involving a private "warehouse bank" designed to circumvent the bank regulatory and reporting requirements.

Only one case has reversed a district court's decision to enhance based on sophisticated means. In *United States v. Stokes,* 998 F.2d 279, 281–83 (5th Cir.1993), the court held any sophisticated means used in the case were to conceal embezzlement, not to hide tax evasion. Ms. Stokes simply did not tell her accountant about the income derived from her embezzlement. *See generally United States v. Charroux,* 3 F.3d 827, 836–37 (5th Cir.1993).

By comparison with the decided cases, Mr. Rice's tax evasion scheme was not sophisticated. He merely claimed to have paid withholding taxes he did not pay. Although the trial court's finding is entitled to deference, we are hard pressed to agree with its conclusion. In substance, Mr. Rice's fraud is the functional equivalent of claiming more in itemized deductions than actually paid. If that scheme is sophisticated within the meaning of the guidelines, then every fraudulent tax return will fall within that enhancement's rubric.

▋ Section 2F1.1(b)(2)(A) provides for a two-level enhancement for fraud and deceit crimes involving more than minimal planning. The commentary to § 1B1.1 defines "more than minimal planning" as follows:

> "More than minimal planning" means more planning than is typical for commission of the offense in a simple form. "More than minimal planning" also exists if significant affirmative steps were taken to conceal the offense.
>
> "More than minimal planning" is deemed present in any case involving repeated acts

over a period of time, unless it is clear that each instance was purely opportune. Consequently, this adjustment will apply especially frequently in property offenses.

In *United States v. Williams,* 966 F.2d 555 (10th Cir.1992), we held a computer embezzlement scheme constituted more than minimal planning. In *United States v. Sanchez,* 914 F.2d 206 (10th Cir.1990), a defendant, who on fifteen occasions used a stolen credit card he received from his brother, engaged in more than minimal planning. Mr. Rice's fraud in this case is similar and falls within the sentencing guidelines commentary.

For three consecutive years, Mr. Rice employed a fairly complicated scheme to receive tax refunds. His actions are more calculated and took more planning than simply failing to report income. When coupled with the fact he conducted his scheme in three consecutive years, there is enough in the record to support the district court's finding.

■ Moreover, Mr. Rice argues the district court erred in enhancing his sentence by two levels under § 3B1.3 for using a special skill in the commission of his crime. Mr. Rice acknowledges that an accountant has the type of special skill contemplated by the guidelines; however, he contends the district court erred by failing to make specific findings he used his special skill to significantly facilitate either the commission or concealment of his offense. *United States v. Gandy,* 36 F.3d 912 (10th Cir.1994).

Section 3B1.3 provides, "[i]f the defendant ... used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels." The commentary further defines a "special skill" as "a skill not possessed by members of the general public and usually requiring substantial education, training or licensing. Examples would include pilots, lawyers, doctors, **accountants,** chemists and demolition experts." U.S.S.G. § 3B1.3, comment. (n. 2) (emphasis added).

In *Gandy,* this court outlined the two-step inquiry under § 3B1.3. First, the government must show the defendant possessed a special skill. The requirement is easily met in this case because an accountant is one of the listed examples in the commentary. Sec-

ond, the government must show the defendant used his special skill to facilitate the commission or concealment of his offense. *Gandy,* 36 F.3d at 915–16. In *Gandy,* we remanded for a further finding of whether the defendant podiatrist used his special skill to commit Medicare fraud because we concluded we could not determine from the district court's findings or the record how the defendant used his special skill to commit fraud. *Id.* at 916. Mr. Rice claims the same result should pertain here because the district court did not make a specific finding about how he used his CPA skills for his tax evasion.

Yet, the record, taken as a whole, demonstrates how Mr. Rice used his special skills. The district court heard all the evidence in the case and presumably in accepting the Presentence Report's enhancement under § 3B1.3 agreed with its conclusion.

■ Finally, Mr. Rice argues the different enhancements applied to increase his sentence all punish him for being an accountant who engaged in tax evasion. He contends the sophisticated means, special skill, and more than minimal planning enhancements overlap considerably. Applying all of them in this case results in improper double counting and a fundamentally unfair cumulative sentence. The sentencing guidelines reflect a general policy against double counting. This explains their provisions for grouping offenses and instances of similar conduct. U.S.S.G. § 1B1.3, comment. and § 3D1.2(d). Further, several specific guidelines require that a particular circumstance is not to be considered twice in calculating a defendant's offense level. *See, e.g.,* U.S.S.G. §§ 3B1.3; 3A1.1, comment. (n. 2); 3C1.1, comment. (n. 4). Case law has also considered double counting impermissible. *United States v. Flinn,* 18 F.3d 826, 829 (10th Cir. 1994); *see also Lowder,* 5 F.3d at 472.

This court has recently defined impermissible double counting under the sentencing guidelines in this fashion:

> Impermissible double counting or impermissible cumulative sentencing occurs when the same conduct on the part of the defendant is used to support separate increases under separate enhancement pro-

visions which necessarily overlap, are indistinct, and serve identical purposes.

*Flinn,* 18 F.3d at 829. As already noted, Mr. Rice was sentenced alternatively under § 2T1.3 or § 2F1.1. Therefore, the sophisticated means enhancement of § 2T1.3(b)(2) cannot be considered with the more than minimal planning enhancement of § 2F1.1(b)(2)(A) for double counting purposes. The only way Mr. Rice received an impermissible cumulative sentence is if it was improper to enhance his sentence for use of a special skill under § 3B1.3 with either the sophisticated means or the more than minimal planning enhancements. Yet, each of these enhancements serves a distinct purpose.

The purpose of the special skill enhancement is to punish those criminals who use their special talents to commit crime. In contrast, the sophisticated means and more than minimal planning enhancements are designed to target criminals who engage in complicated criminal activity because their actions are considered more blameworthy and deserving of greater punishment than a perpetrator of a simple version of the crime. We therefore see no double counting here.

The judgment of the district court is **AFFIRMED IN PART AND REVERSED IN PART.** The case is **REMANDED** for resentencing.