**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 10 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

AUNDREA H. JONES,

      Defendant - Appellant.

No. 97-7143
(D.C. No. CR-97-019-B)
(District of Eastern Oklahoma)

---

**ORDER AND JUDGMENT**[*]

---

Before **PORFILIO**, **HOLLOWAY**, and **ANDERSON**, Circuit Judges.

---

The government charged Aundrea H. Jones with one count of making a false, fictitious or fraudulent claim to the United States Department of Agriculture (USDA), a violation of 18 U.S.C. § 287, by inflating the number of meals provided through the USDA Summer Food Service Program he sponsored. Mr. Jones pled guilty to the charge but attempted to withdraw the plea the day before his sentencing. He now challenges the district's court's denial of his Fed. R. Crim. P. 32(e) motion and attacks

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

the factual and legal basis of its imposition of various upward adjustments to his sentence. Finding no abuse of discretion in the district court's refusal to permit Mr. Jones to withdraw his guilty plea and no error in its calculation of the sentence, we affirm.

## I. Background

The USDA funds the Summer Food Service Program, which provides breakfasts and lunches to children in needy areas during the summer months when they are not in school. In the summer of 1995, USDA approved a program sponsored by Mr. Jones through his nonprofit corporation, St. Luke Outreach, Inc., in Muskogee, Oklahoma. As director, Mr. Jones signed a document stating he had sole financial and administrative responsibility to provide meals served at six locations.

That fall, the Office of Inspector General (OIG) of the USDA received a complaint Mr. Jones had falsified meal counts. OIG discovered more meals were claimed than cartons of milk purchased based on the number of milks Mr. Jones ordered. That is, to be considered "a reimbursable meal" both state and federal regulations required each meal, breakfast and lunch, to be served with an 8 ounce carton of milk. OIG Special Agent Rick Yott interviewed employees of St. Luke Outreach and reviewed audit reports, purchase orders from Hiland Dairy, the sole milk supplier, and claim forms to establish Mr. Jones had billed the USDA for 6,948 more

meals than he actually served. Subsequently, Agent Yott and a USDA auditor met with Mr. Jones and showed him claim forms with forged signatures. Mr. Jones then wrote and signed a statement describing his falsifying claim forms and directing others to change accountings of total meal counts "in order for me to receive more U.S.D.A. funds that [sic] I was entitle [sic] to." The government subsequently charged him with one count of making false, fictitious, or fraudulent claims to the USDA under 18 U.S.C. § 287.

On May 15, 1997, the district court held a hearing in which Mr. Jones told the court he desired to plead guilty to the charge. The court scrupulously guided Mr. Jones through each facet of Fed. R. Crim. P. 11(c), ascertaining he had met and was present with his attorney, understood the charge, and acknowledged the factual basis for entering the plea, that he "was making claims for meals" not served. The government set the total amount of loss at $12,946, and Mr. Jones stated he got that money from the false claims. The court informed Mr. Jones the maximum term of imprisonment was five years. Mr. Jones then entered his guilty plea.

The day before his sentencing, Mr. Jones, accompanied by his attorney, met with a probation officer and recanted, asserting he had not submitted false claims for reimbursement. Mr. Jones then filed a motion under Fed. R. Crim. P. 32(e) to withdraw his plea, stating he may have falsely signed other names but did not do so with fraudulent intent, and the government, in fact, suffered no loss. He explained he

- 3 -

entered his plea under the mistaken belief that "signing another's name to certain documents was a violation of the law even though fraudulent or criminal intent was lacking." The court denied the motion relying on the analysis provided by *United States v. Killingsworth*, 117 F.3d 1159, 1161-62 (10th 1997). After a hearing, the court sentenced Mr. Jones to 24 months' imprisonment, 36 months of supervised release, a $100 special assessment, and restitution in the amount of $12,936.69, to be paid in monthly installments of $430.[1]

## II. Fed. R. Crim. P. 32(e)

To prove a violation of 18 U.S.C. § 287, the government must establish (1) defendant knowingly made and presented to a United States department or agency a false, fraudulent or fictitious claim against the United States, and (2) defendant acted with knowledge the claim was false, fraudulent or fictitious. *United States v. Kline*, 922 F.2d 610, 611 (10th 1990). In this appeal, Mr. Jones contends when he entered his plea, he took vicarious responsibility for the actions of others, conduct which does not satisfy the government's burden of proving he acted intentionally to submit false claims. Rather, at all times, he knew he did not claim more meals than he served but only bought *less* milk. He urges "the fallacy" of the government's case is "that many

---

[1]During oral argument, Mr. Jones' counsel told the panel although his client would finish serving his sentence in April 1999, he pursued the appeal to clear his name. Presumably, too, a successful appeal would erase the restitution component as well.

children do not like and, therefore, do not drink milk." Because Mr. Jones "deemed it wasteful" to throw out unopened milk cartons, he simply put them on ice and served them with another meal. Hence needing less milk, he ordered less milk, causing the auditors, mechanically matching up meals to milk, to conclude Mr. Jones was claiming more meals when, in fact, he "re-served unused, unopened containers of milk."[2] Mr. Jones believes this misunderstanding thus placed him in the "Kafkaesque predicament" of the police investigating a "crime" which did not occur. He urges here, therefore, that although he initially accepted responsibility for the "proper administration of the program" and entered a plea, the district court abused its discretion in preventing him from withdrawing the plea when he discovered he had not understood its factual basis.

Fed. R. Crim. P. 32(e) states, "If a motion to withdraw a plea of guilty or nolo contendere is made before sentence is imposed, the court may permit the plea to be withdrawn if the defendant shows any fair and just reason." Although the motion should be "freely allowed and treated with liberality," *Barker v. United States*, 579 F.2d 1219, 1223 (10th Cir. 1978), withdrawal is not a matter of right. *Id.* "[A] trial court's decision on this issue is nevertheless discretionary ... and [we] will not reverse

---

[2]Francis Bruff who administered the Program for the Oklahoma Department of Education described visits to Mr. Jones' site during which she first criticized his failure to properly chill the unused milk and persistently explained to him the need to purchase a new milk for each meal, permitting the unused milk to be given to children who wanted more but requiring each meal to match a milk.

absent a showing that the court acted 'unjustly or unfairly.'" ***United States v. Graves***, 106 F.3d 342, 343 (10th Cir. 1997) (quoting ***Barker***, 579 F.2d at 1223).

To decide whether Mr. Jones met his burden of demonstrating a fair and just reason to withdraw his plea, the district court considered seven factors: (1) defendant's assertion of innocence; (2) prejudice to the government if the motion is granted; (3) whether defendant delayed filing the motion to withdraw the plea; (4) inconvenience to the court if the motion is granted; (5) the quality of defendant's assistance of counsel during the plea; (6) whether the plea was knowing and voluntary; and (7) the waste of judicial resources. ***Killingsworth***, 117 F.3d at 1161-62. First, the court found Mr. Jones never outright asserted his innocence but only qualified his fraudulent behavior in the face of his admission of guilt to the court and signed statement. Second, the court believed the government would suffer some prejudice by now having to prepare for a trial that was previously set and then vacated months before. Third, the court found Mr. Jones delayed filing his motion until the day before sentencing perhaps having fully grasped the possibilities of his impending sentence. Fourth, the court stated it would experience some inconvenience because the trial was "unanticipated." Fifth, although acknowledging Mr. Jones' criticism of his counsel, the court found the complaints lacked specificity and observed counsel performed adequately. Sixth, the court found Mr. Jones' plea was knowing and voluntary and fully consistent with his prior confessions. The court recalled having

carefully set forth the factual predicates which Mr. Jones acknowledged during the Rule 11(c) proceeding.[3]

Mr. Jones now urges the district court abused its discretion by not considering the two fair and just reasons he advanced to withdraw his plea: (1) that OIG officials intimidated him when he wrote his statement; and (2) his attorney who was on vacation much of the time never explained the factual basis of the plea. However, the record dwarfs this showing, devoid as it is of any representation by Mr. Jones that he is innocent of the conduct charged. Were we to remove each alleged flaw in the court's taking the plea, we are still left with a record in which Mr. Jones stated he submitted the false claims, he directed others to falsify and sign them, and he is responsible.[4] We therefore conclude the district court did not abuse its discretion in

---

[3]Although Mr. Jones challenged both the district court's acceptance of his plea under Fed. R. Crim. P. 11(c) and refusal to withdraw it under Fed. R. Crim. P. 32(d), only the Rule 32 disposition is before us. We look through that lens with a clearly erroneous standard of review at the district court's finding a factual basis for Mr. Jones' guilty plea, *Graves*, 106 F.3d at 343, and note Mr. Jones stated under oath he completed and submitted forms to the USDA to be reimbursed for meals he did not serve. He further stated both at the Rule 11(c) proceeding and in his written statement that he received money for the false claims. The court did not clearly err in finding a factual basis for the plea. *United States v. Barnhardt*, 93 F.3d 706, 708-09 (10th 1996).

[4]At his sentencing hearing, Mr. Jones stated, "Your Honor, I take full responsibility. I admit that there are some errors in the documentation. Cathy Graham falsified Ms. Finch's name under the order of my direction. I take that blame, but the documentation that was sent to the State, Your Honor, was not meals that was not served to children. That's why I withdrew my plea of guilty." Indeed, Mr. Jones appeared to be solely concerned with the amount of loss the government alleged and argued the correct figure was $5,093.72, not $12,946 as the government claimed.

denying the Rule 32(e) motion.

### III. Sentencing

Mr. Jones contests the increases to his base offense level under USSG § 3C1.1, for obstructing justice; USSG § 3B1.1(c), for his role in the offense as a leader or manager; USSG § 3B1.3, for his abuse of a position of trust; USSG § 2F1.1, based on an incorrect amount of loss; and USSG § 3E1.1, for refusing to apply a two-level decrease in the offense level for his acceptance of responsibility. For each assertion of error, Mr. Jones faults the government in not meeting its burden of proof by a preponderance of the evidence and the court in failing to provide the factual basis to support the particular increase.

While the government bears the burden of proof for a sentence increase, that burden shifts to the defendant to prove any decrease in sentence sought. *United States v. Rice*, 52 F.3d 843, 848 (10th Cir. 1995). We then review the sentencing court's findings of fact for clear error and give due deference to its application of the guidelines to the facts of a particular case. *Id.* at 849. However, we review the district court's legal interpretation of the guidelines de novo. *United States v. Kunzman,* 54 F.3d 1522, 1531 (10th Cir. 1995); *United States v. Queen*, 4 F.3d 925, 928 (10th 1993).

In each instance of alleged error, we are satisfied the government offered

sufficient evidence during the sentencing hearing, and the court properly found the facts and applied the guideline adjustment. First, USSG § 3C1.1 provides a two level increase if "defendant willfully obstructed or impeded ... the administration of justice." At the sentencing hearing, the government offered the testimony of United States Probation Officer Kelly Garrett who testified about Mr. Jones' meeting with him and recanting his prior statements to OIG Agent Yott that he submitted false claims. In determining whether to apply this guideline, the court cited Mr. Jones' telling Officer Garrett that he had authorization to submit claims for meals lacking the milk component which required the probation officer to conduct further investigation and determine the statement was false. It also noted Mr. Jones' testimony in the hearing to withdraw the plea that he had not made false claims "stating essentially the same thing to me in court as you had to Probation Officer Garrett." The court found providing materially false information to the Probation Office and the court are "deemed to constitute obstruction of justice." The court's conclusion is fully supported by this record and is not error.[5] *United States v. Pretty*, 98 F.3d 1213, 1221 (10th Cir. 1996).

Second, USSG § 3B1.1(c) mandates a two level increase if "defendant was an organizer, leader, manager, or supervisor in any criminal activity." The court rejected

---

[5]The court also observed this behavior was inconsistent with defendant's acceptance of responsibility especially noting Mr. Jones' false or frivolous denial of the relevant conduct indicated in the presentence report.

Mr. Jones' objections the adjustment was not warranted because he did no planning, organizing or supervising. It cited the 31 false claims defendant submitted, obviously multiple acts of fraud occurring over a period of time, and the people he hired and directed to prepare false claims and forge signatures on the documents. At the sentencing hearing, the government offered the testimony of some of these individuals and although the court did not name them specifically at the time of sentencing, that evidence was explicitly incorporated into the court's findings that Mr. Jones "exercised complete control of at least one other criminally responsible participant in the case," warranting the adjustment. *United States v. Tovar*, 27 F.3d 497, 499 (10th Cir. 1994).

To support USSG § 3B1.3, abuse of a position of trust, the court noted Mr. Jones submitted his application for the Summer Food Program and designated himself as the only authorized representative of his nonprofit organization, certifying "that the claims would only be made for those meals actually served to eligible children." The court observed that in this position, he was "subject to little or no supervision by the victim of the offense" and any wrongdoing would be "difficult to detect."

As we have noted, in the typical case applying § 3B1.3, "the victim is a business and the defendant is an employee who has taken advantage of the knowledge and responsibilities acquired by virtue of his or her position within the company to embezzle or otherwise steal from the company." *United States v. Brunson*, 54 F.3d

673, 677 (1995). There, the position contributes to facilitating the commission or concealment of "the defense (e.g. by making the detection of the offense or the defendant's responsibility for the offense more difficult.)" *Id.*; *see* USSG § 3B1.3, cmt 1. However, § 3B1.3 also embraces conduct involving a fiduciary or personal trust relationship. *United States v. Queen*, 4 F.3d 925 (10th Cir. 1993). In this area, however, "we must carefully distinguish between those arms-length commercial relationships where trust is created by the defendant's personality or the victim's credulity, and the relationships in which the victim's trust is based on defendant's position in the transaction. Only in the latter does defendant's position enable him to commit or conceal the fraud, or significantly facilitate the offense." *United States v. Koehn*, 74 F.3d 199, 201 (10th Cir. 1996).

Here, the court found as administrator of this program, Mr. Jones placed himself in a position of trust with the USDA to facilitate the commission of the offense. The USDA conferred authority upon him to supervise based on his representations he understood the regulations sufficiently to hold him accountable. *Queen*, 4 F.3d at 929 n.3. The district court did not err in increasing Mr. Jones' sentence under this guideline.

Third, the court rejected Mr. Jones' objection to the amount of loss calculation, citing his prior testimony in the change of plea and his written statement setting the amount of loss at just under $13,000. As he did at the sentencing hearing, Mr. Jones

insists the amount of loss cannot exceed $5,093.72. However, the district court's calculations were based on the testimony of Agent Yott who explained how he examined Mr. Jones' records and calculated the loss. Although it is not Mr. Jones' burden to establish the amount of loss, *Rice*, 52 F.3d at 848, nothing he presently argues impairs the calculations the district court used as the factual basis of the sentence adjustment. The government established by a preponderance of the evidence the number of milks purchased as compared to the number of meals for which Mr. Jones sought reimbursement as well as the dates the invoices covered. The sentencing court's determination based on this evidence was not clearly erroneous. *United States v. Hargus*, 128 F.3d 1358, 1365 (10th Cir. 1997).

Finally, the district court found that "a defendant who falsely denies or frivolously contests the relevant conduct that the Court determines to be true has acted in a manner inconsistent with the acceptance of responsibility." In *United States v. Chimal*, 976 F.2d 608 (10th Cir. 1992), we stated, "[w]hether a defendant should be granted a two level adjustment for acceptance of responsibility depends upon whether a defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." *Id.* at 613 (internal quotation marks omitted). As the district court aptly noted, Mr. Jones has qualified his criminal conduct but never expressed responsibility for it. The district court correctly concluded Mr. Jones' obstruction of justice is inextricably intertwined with his lack of acceptance of

responsibility. Mr. Jones has failed to meet his burden to qualify for the two level adjustment. *Tovar*, 27 F.3d at 499.

Thus, because the district court sufficiently articulated the factual basis for each adjustment, supported fully by the presentence report and the testimony offered at the sentencing hearing, and properly applied the guidelines, we find no error in its arriving at a total offense level of 17 and setting Mr. Jones' term of incarceration at 24 months, the bottom of a range of 30 months.

We therefore **AFFIRM**.

ENTERED FOR THE COURT

John C. Porfilio
Circuit Judge

- 13 -