UNITED STATES of America,
Plaintiff–Appellee,

v.

Judith A. PARRISH, Defendant–
Appellant.

No. 95–3788.

United States Court of Appeals,
Sixth Circuit.

Argued April 9, 1996.

Decided May 31, 1996.

Christopher K. Barnes (briefed), Sharon J. Zealey (argued), Office of U.S. Attorney, Cincinnati, OH, for Plaintiff-Appellee.

Elizabeth E. Agar (argued and briefed), Robert Scott Croswell, III, Croswell & Adams, Cincinnati, OH, for Defendant-Appellant.

Before: KENNEDY and COLE, Circuit Judges; COHN, District Judge.[*]

COHN, District Judge.

This is a sentencing appeal. Defendant-appellant Judith Parrish (Parrish) pled guilty to mail fraud, 18 U.S.C. §§ 1341 and 1346, and was sentenced to 15 months imprisonment, two years supervised release, and a $10,000 fine. The fraud arose from a scheme in which Parrish received "commission" payments in exchange for recommending a certain subcontractor to her employer. The sentencing court, following USSG § 2F1.1 (Nov. 1994) and the recommendations in the presentence report, determined that the sentencing guidelines called for a sentencing range of 15 to 21 months imprisonment, 2 to 3 years supervised release, and a fine of $4,000 to $40,000.

Parrish argues on appeal that the sentencing court erred by enhancing the offense

---

[*] The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

level on the basis of her fraudulent gain rather than on any loss her employer might have suffered. The government argues in response that the sentencing court correctly applied the sentencing guidelines. For the reasons which follow, Parrish's sentence will be affirmed.

## I.

### A.

As part of the guilty plea, the government and Parrish agreed to a joint statement of facts which "sets forth the relevant facts and circumstances of the actual offense conduct and offender characteristics." A summary of the joint statement follows.

Parrish was employed by Structural Dynamics Research Corporation (SDRC) from 1970 until November of 1992. SDRC is a software developer that, as part of its service to customers, prepares and distributes instruction, training and maintenance manuals. SDRC contracts with outside printing companies to produce the manuals. Parrish was a full-time, salaried administrative assistant, part of whose job duties included obtaining competitive pricing information from printers and recommending their approval. SDRC management made the final decision on whether to accept a particular bid from a printer.

Otto Zimmerman and Sons Company, Inc. (Zimmerman), was one of the printing companies used by SDRC. In 1982, Zimmerman offered to pay Parrish a 10% "commission" on each SDRC job it received, in exchange for her recommendation of Zimmerman to do the work. Zimmerman told Parrish that the "commission" resulted in reduced profits for Zimmerman rather than increased prices to SDRC, so SDRC would not be harmed by the payments. Parrish agreed to the arrangement, but did not disclose it to SDRC.

Over the next ten years, Zimmerman was awarded numerous printing contracts by SDRC. According to Parrish, who arranged the contracts and recommended them for approval, Zimmerman was the lowest bidder each time it was given a printing job. After Zimmerman was paid on each contract, it would mail to Parrish's home a check for 10%

of the contract price, accompanied by false invoices. Parrish paid federal income tax on this money, which totaled approximately $362,000.

SDRC did not become aware of the "commission" arrangement until 1992 when it instituted the investigation which led to the charge against Parrish. As a full-time, salaried employee of SDRC, Parrish was not authorized to solicit or receive any gifts, gratuities or commissions. She was a fiduciary of SDRC, and her receipt of the "commission" payments breached her fiduciary duty to SDRC and deprived it of its right (1) to know about Parrish's receipt of the 10% "commission" payments and (2) to control how SDRC spent its money and conducted its business. The actual value of SDRC's direct loss cannot be quantified because there is no evidence that Zimmerman charged SDRC more than it otherwise would have. Zimmerman was not charged with any criminal offense and on its own agreed to pay SDRC $460,000.

### B.

### 1.

Parrish pled guilty to a one count information charging her with mail fraud, 18 U.S.C. §§ 1341 and 1346, which carries a maximum penalty of five years imprisonment, three years supervised release, a $250,000 fine, restitution and payment of a $50 special assessment. The plea agreement provided that Parrish would plead guilty to the information, cooperate fully with the government's investigation, and pay a special assessment of $50. In exchange, the government agreed that any self-incriminating information Parrish revealed would not be used against her in sentencing, it would inform the court of the nature of the offense and of Parrish's cooperation, and it would not prosecute Parrish for other possible non-tax violations arising from her arrangement with Zimmerman. Parrish acknowledged in the agreement that she could still be charged with perjury, that the sentencing determination was reserved solely to the court and could reach the maximum penalty allowed by law, and that the federal sentencing guidelines applied to the sentenc-

ing determination. Both Parrish and the government acknowledged that either party could appeal an unlawful or incorrect sentencing determination.

### 2.

In determining the sentence for Parrish's fraud offense, the sentencing court applied USSG § 2F1.1. Section 2F1.1(a) establishes a base offense level of 6 and subsection (b)(1) enhances the offense level in proportion to the amount of the loss caused by a defendant, *i.e.,* "the value of the money ... or services unlawfully taken," USSG § 2F1.1, comment. (n. 7). For determination of the amount of loss, Note 7 refers the sentencing court to the Commentary section of USSG § 2B1.1, which states that "[t]he value of the property stolen plays an important role in determining sentences ... because it is an indicator of both the harm to the victim *and the gain to the defendant."* USSG § 2B1.1, comment. (backg'd.) (emphasis added). The guidelines harmonize consideration of both the victim's loss and the defendant's gain by stating that "[f]or the purposes of subsection (b)(1), the loss need not be determined with precision. The court *need only make a reasonable estimate of the loss,* given the available information.... *The offender's gain from committing the fraud is an alternative estimate* that ordinarily will underestimate the loss." USSG § 2F1.1, comment. (n. 8) (emphasis added).

### 3.

The presentence report recommended that the $362,000 Parrish received from Zimmerman be used, as the amount reasonably estimating SDRC's loss, to determine the specific offense level under § 2F1.1(b)(1). The report also recommended that Parrish's offense be increased nine levels, from 6 to 15, because of the magnitude of the loss (USSG § 2F1.1(b)(1)(J,K)) and two more levels because the offense involved "more than minimal planning" (USSG § 2F1.1(b)(2)), and that the offense level then be reduced three levels for acceptance of responsibility (USSG § 3E1.1). This computation resulted in an offense level of 14 and, coupled with a criminal history category I, yielded a guideline range of 15 to 21 months imprisonment, 2 to 3 years supervised release, and a fine of $4,000 to $40,000.

### 4.

Parrish objected to the presentence report's determination that there was a loss of $362,000, arguing that "the mere fact that [Parrish] benefits does not mean that there's a loss to the victim," and that the government "had no proof to establish that there was a loss.... There's not one bit of proof, and the stipulation shows that, that [Parrish] ever made a decision to the detriment of SDRC."

In response, the probation officer reiterated the reasons for determining the amount of loss as described above. An Assistant United States Attorney told the sentencing court that

> [i]t's unclear what the actual loss was to the company, because had the company known that she was receiving a commission, they may have been successful in getting a lower amount of cost. In this particular case, the facts can't establish exactly what that would be, whether had the employer known of her commissions, whether that would have entered into a factor where they could negotiate a lower cost.

The government further argued that, "because the loss cannot be determined with precision, the Probation Officer has used the alternative of looking at the gain of the defendant, which is provided for in the guidelines."

### 5.

The sentencing court ruled from the bench that income tax records showing that Parrish received $362,000 from Zimmerman were "proof of the amount of money that she received," and therefore of the amount of loss under the guidelines. The sentencing court then adopted the recommendation in the presentence report and sentenced Parrish to 15 months of imprisonment, two years of supervised release, and a $10,000 fine.

## II.

■ We "must uphold a sentencing court's factual findings unless they are clearly erroneous," *United States v. Moored*, 38 F.3d 1419, 1423 (6th Cir.1994), but "whether those facts as determined by the district court warrant the application of a particular guideline provision is purely a legal question and is reviewed *de novo* by this court," *United States v. Garner*, 940 F.2d 172, 174 (6th Cir.1991). Parrish does not dispute the factual basis for her sentence, and therefore we engage in a *de novo* review of the sentence.

## III.

### A.

Parrish argues that the sentencing court erred by not making an independent determination that SDRC suffered a loss and by finding that Parrish's gain was a legitimate approximation of SDRC's loss. Parrish does not dispute that she received $362,000, but argues that SDRC did not suffer *any* actual or intended loss from the arrangement since what she received did not increase SDRC's costs and she entered into the arrangement with the intent not to increase SDRC's costs.

### B.

The guidelines clearly provide that the sentencing court must look to the fraud victim's loss. However they also provide that the loss may be estimated by the defendant's gain, if the estimate is reasonable. USSG § 2F1.1, comment. (nn. 7,8). Nothing in § 2F1.1 "suggests that a fraud loss must be estimated and punished in the case where a fraudulent scheme could result in no loss," *United States v. Khan*, 969 F.2d 218, 221 (6th Cir.1992) (no loss under USSG § 2F1.1 when attempt to defraud Social Security Administration failed because the Administration determined that petitioner was ineligible for benefits anyway), so we first examine whether SDRC suffered any loss as a result of Zimmerman's "commission" payments to Parrish.

### 1.

■ A fiduciary who violates her duties for her own profit is "accountable ... for all the profits obtained ... although the ... [party owed the duty] may not have been injured thereby." *Jackson v. Smith*, 254 U.S. 586, 588–89, 41 S.Ct. 200, 201, 65 L.Ed. 418 (1921). Parrish agreed that her failure to inform SDRC of her arrangement with Zimmerman was a breach of her fiduciary duty. If Parrish had fulfilled her fiduciary duty to SDRC by informing it of the "commission" payments, SDRC could have taken all or some of the money for itself. Thus, Parrish's breach did cause SDRC a loss. Alternatively, had Parrish told SDRC about the arrangement, SDRC and Zimmerman could have reached an agreement whereby Zimmerman would have charged SDRC less. Even though Zimmerman stated that the "commission" did not affect its prices to SDRC, Parrish's fraud cost SDRC the opportunity to reach such an arrangement. Thus, under either scenario, Parrish's fraud resulted in a loss to SDRC.

### 2.

■ The remaining question is whether the specific amount used by the sentencing court as SDRC's loss under USSG § 2F1.1(b)(1) was proper. The parties agreed that an exact figure of SDRC's loss was not quantifiable because of the nature of the arrangement. All that is required of a sentencing court, however, is a "reasonable estimate of the loss." USSG § 2F1.1, comment. (n. 8). The loss should be an "indicator of both the harm to the victim and the gain to the defendant." USSG § 2B1.1, comment. (backg'd.). As discussed above, SDRC lost the opportunity to receive the 10% "commission" itself or to have its printing costs lowered by 10% or some fraction thereof. According to Parrish's tax records, the total amount of the "commission" payments was $362,000. Thus, $362,000 represents both SDRC's loss and Parrish's gain, and this amount rightly formed the basis for determining the appropriate offense level under the guidelines.

## IV.

For the reasons stated above, the sentencing court correctly applied the sentencing guidelines, and Parrish's sentence is AFFIRMED.