**UNITED STATES of America, Plaintiff–Appellee,**

**v.**

**Ronald FLEMING, Defendant–Appellant.**

No. 96–5762.

United States Court of Appeals, Sixth Circuit.

Submitted Sept. 11, 1997.

Decided. Oct. 17, 1997.

1991). *But see NLRB v. United States Postal*      *Serv.,* 18 F.3d 1089, 1104 (3d Cir.1994).

Tracy L. Berry , Asst. U.S. Attorney (briefed), Office of the U.S. Attorney, Memphis, TN, for Plaintiff–Appellee.

Michael J. Stengel (Briefed), Memphis, TN, for Defendant–Appellant.

Before: MERRITT, JONES, and NORRIS, Circuit Judges.

MERRITT, Circuit Judge.

This is a sentencing appeal. Defendant Ronald Fleming appeals the district court's use of "intended loss" to enhance his sentence on twenty-five counts of tax fraud for preparing fraudulent tax returns in violation of 18 U.S.C. § 287. At issue is whether the district court correctly enhanced Mr. Fleming's sentence by using the total amount of fraudulent tax refunds that he filed, without considering whether any of the taxpayers involved might have been entitled to a legitimate refund. We find the district court did not abuse its discretion under the Sentencing Guidelines and thus affirm Mr. Fleming's sentence.

### I.

A jury convicted Mr. Fleming of tax fraud, under 18 U.S.C. § 287, for preparing fraudulent tax returns. He had designed a scheme in which he convinced low-income residents of particular neighborhoods to allow him to file fraudulent tax returns on their behalf. After he had obtained a taxpayer's name, social security number, and address, he created a false W–2 form, listed a fictional employer, and then electronically filed for a refund. These refunds were typically based upon head-of-household status, a fictional dependent who was less than one year old, and earned income credit. Mr. Fleming then obtained anticipation loans for the taxpayer in the amount of the refund claimed, from which he took a percentage. Although he prepared at least fifty-seven of these returns in 1991, the United States Treasury paid only $2,115 in refunds before the Internal Revenue Service discovered his scheme.

At trial, the Government produced the twenty-five fraudulent tax returns that formed the basis for the indictment. Twenty-three of the twenty-five taxpayers testified against Mr. Fleming, only four of whom were employed during 1991. There is no evidence in the record indicating whether or not one of the taxpayers who did not testify was employed. The jury convicted Mr. Fleming on all twenty-five counts.

At the sentencing hearing, the Government sought to establish a greater loss and thereby enhance Mr. Fleming's sentence by introducing thirty-two additional returns that he allegedly prepared. These returns were admissible as relevant conduct under U.S.S.G. § 1B1.3. Armed with these additional returns, the Government requested an increase of seven levels, pursuant to U.S.S.G. § 2F1.1(b)(H), based upon a total loss of $163,451: $72,182, from the twenty-five returns supporting the conviction, plus $91,269 in refunds from the additional returns. The Government produced one witness, a special IRS agent, to authenticate these additional returns.

Mr. Fleming objected to the proposed total loss on two grounds. First, he claimed that the Government could only substantiate $56,-940 of the $72,182 loss, because four of the twenty-five taxpayers had earned legitimate income in 1991 and one who did not testify might have. Second, he challenged the Government's proof with respect to the entire $91,269 from the thirty-two additional returns, since the Government had not established employment or income status for any of these taxpayers. Because a total of thirty-seven taxpayers could have been legitimately

entitled to a portion of the requested refunds, Mr. Fleming argued the Government failed to satisfy its burden of proving any loss over $56,940. With a substantiated loss of $56,940, he claimed the Government could only enhance his sentence by five levels, pursuant to U.S.S.G. § 2F1.1(b)(F), resulting in a sentence between forty-one and fifty-one months.

The district court rejected Mr. Fleming's argument and found the entire loss of $163,451 was supported by the twenty-five returns produced at trial and the additional thirty-two claims adduced at sentencing. The court therefore enhanced Mr. Fleming's sentence by seven levels, pursuant to U.S.S.G. § 2F1.1(b)(h), resulting in a total offense level of seventeen. When combined with Mr. Fleming's category-VI criminal history, this resulted in a recommended sentence of fifty-one to sixty-three months. The district court sentenced Mr. Fleming to sixty months incarceration.

In this appeal, Mr. Fleming challenges his sentence in two respects. First, he reiterates his objections to the total intended loss used to enhance his sentence. Second, he contends the district court improperly shifted the burden of proof at the sentencing hearing by stating that "the taxpayer has the burden of showing the right to a refund." We address these two contentions in turn.

## II.

■ This Court reviews the district court's calculation of loss under the sentencing guidelines de novo. *United States v. Lucas,* 99 F.3d 1290, 1293 (6th Cir.1996); *United States v. Wolfe,* 71 F.3d 611, 616 (6th Cir. 1995). The sentencing court's factual findings must be established by a preponderance of the evidence and are upheld unless they are clearly erroneous. *United States v. Flowers,* 55 F.3d 218, 220 (6th Cir.1995); *United States v. Watkins,* 994 F.2d 1192, 1195 (6th Cir.1993). A criminal defendant who appeals the district court's sentence enhancement based upon the amount of loss caused by fraud must show that the court's calculation of loss "was not only inaccurate, but was outside the universe of acceptable computations." *United States v. Jackson,*

25 F.3d 327, 330 (6th Cir.1994); *see also* U.S.S.G. § 2F1.1, comment. n.8 ("[T]he loss need not be determined with precision; [t]he court need only make a reasonable estimate of the loss given the available information."); *United States v. Parrish,* 84 F.3d 816, 819 (6th Cir.1996); *United States v. Moored,* 38 F.3d 1419, 1424 (6th Cir.1994). Mr. Fleming therefore carries a heavy burden on appeal.

The guidelines provide for sentencing of those convicted of tax fraud under § 2F1.1's specifications. The base offense level for this guideline is six, while § 2F1.1(b) requires increasing offense levels according to the amount of loss caused by the fraud. The commentary directs the sentencing court to calculate the "intended loss that the defendant was attempting to inflict ... if it is greater than the actual loss." U.S.S.G. § 2F1.1, comment. n.7. Moreover, when the defendant is convicted under a multiple-count indictment, as here, "[t]he cumulative loss produced by a common scheme or course of conduct should be used in determining the offense level, regardless of the number of counts of conviction." *Id.* at n. 6. The defendant's relevant conduct, as defined by U.S.S.G. § 1B1.3(a)(1)(A), is typically used to calculate the intended loss from a common scheme or course of conduct. *See United States v. Rayborn,* 957 F.2d 841, 844 (11th Cir.1992). These requirements reflect § 2F1.1's intent to punish fraud convicts according to the "potential harmfulness and dangerousness of the offender, independent of the actual harm." U.S.S.G. § 2F1.1, at backg'd; *United States v. Khan,* 969 F.2d 218, 220 (6th Cir.1992).

■ Before the district court may enhance a defendant's sentence based upon intended loss, there must be evidence sufficient to show that (1) the defendant intended the loss, (2) the defendant had the ability to inflict the loss, and (3) the defendant completed all acts necessary to cause the loss. *Watkins,* 994 F.2d at 1196. All three of these requirements were met in the present case, as evinced by the initial success of Mr. Fleming's scheme. The United States Treasury paid $2,115 on the fraudulent returns. Presumably it would have paid all of the refunds had the IRS not discovered his plan.

These facts alone reveal Mr. Fleming possessed the intent, had the ability, and performed the deeds needed to justify his increased sentence.

▮▮▮ The only other factor to consider is whether a preponderance of the evidence supports the intended loss the district court used to increase the sentence. Our precedent defines intended loss as "the loss the defendant subjectively intended to inflict on the victim, e.g. the amount the defendant intended not to repay." *Moored*, 38 F.3d at 1427. In tax fraud cases, we consider the United States Treasury the victim. *United States v. Wright*, 12 F.3d 70, 74 (6th Cir. 1993). As long as the record supports, by a preponderance of the evidence, a conclusion that the defendant realistically intended the loss at issue, we will affirm the enhanced sentence. *Moored*, 38 F.3d at 1427–28.

In the past, we have affirmed the use of total intended loss to enhance a sentence under § 2F1.1 where the defendant designed a scheme to cause a greater loss than that actually suffered. *See United States v. Sanders*, 95 F.3d 449, 454–55 (6th Cir.1996); *Parrish*, 84 F.3d at 819. We have vacated sentences only in cases in which the total intended loss bore no relation to "economic reality," either because the defendant had paid back a portion of fraudulently acquired loans, the defendant had only withdrawn a portion of kited checks, or the plan had no chance of success. *See Lucas*, 99 F.3d at 1296 (loan repayment); *Wright*, 60 F.3d at 241 (same); *United States v. Buckner*, 9 F.3d 452, 454 (6th Cir.1993) (same); *Watkins*, 994 F.2d at 1195–96 (check kiting); *Khan*, 969 F.2d at 221 (scheme failed on other grounds) (quoting *United States v. Schneider*, 930 F.2d 555, 559 (7th Cir.1991)). Although there are no decisions from this Circuit directly on point, the only decisions from other circuits vacating the sentences of defendants convicted under 18 U.S.C. § 287 involved some claims that were properly payable. *See United States v. Parsons*, 109 F.3d 1002, 1005 (4th Cir.1997) (partially fraudulent travel vouchers); *United States v. Abud–Sanchez*, 973 F.2d 835, 839 (10th Cir.1992) (mixed bona fide and false Medicare claims). There is no precedent for reducing a sentence when a defendant like Mr. Fleming based all of the fraudulent claims at issue on false or fictional records.

Mr. Fleming contends the Tenth Circuit's recent decision in *United States v. Rice*, 52 F.3d 843 (10th Cir.1995), supports his position. The defendant in *Rice* was convicted for evading personal income tax through a number of fictional Subchapter S corporations. Although the district court enhanced his sentence based on the total loss proposed by the government, the Tenth Circuit vacated this sentence because no evidence was introduced concerning the amount of taxes the defendant could have avoided using legal, personal deductions. *Id.* at 848. By contrast, Mr. Fleming had no proper claim to any portion of the refunds at issue here. Any portion of the total loss that these taxpayers were legally entitled to claim is irrelevant to Mr. Fleming's sentence, since his scheme did not involve any legitimate claims. The reasoning of *Rice* might apply if Mr. Fleming had used the actual W–2s and real employers of those taxpayers who worked during 1991. Because he instead fabricated W–2s, dependents, and employers on all the returns he prepared, Mr. Fleming's reliance upon *Rice* is misplaced.

Whether the total loss used to enhance Mr. Fleming's sentence was outside the realm of possible computation depends upon what relation $163,451 bears to the economic loss the IRS stood to lose from Mr. Fleming's scheme. When this court reviews a sentencing court's calculation of amount of loss, our touchstone is the "*scope of the fraud as designed by the defrauder*." *Lucas*, 99 F.3d at 1300. In the present case, Mr. Fleming prepared at least fifty-seven fraudulent tax returns in the hopes of obtaining a refund for every one he filed. Thus, he designed his scheme to defraud the United States Treasury out of $163,451 worth of false refunds, none of which he intended to repay. There is no evidence that he attempted to obtain legitimate refunds on behalf of those who worked in 1991. Any refunds that the employed taxpayers may have been due are therefore separate and distinct from the fraudulent returns he filed on their behalf. It was simply fortuitous that some of those

whom Mr. Fleming preyed upon were employed in 1991. Their actual income and employment status did not influence his choice when he recruited them; he cannot use those facts now to narrow the scope of the fraud he designed.

■ Viewing Mr. Fleming's claims in this light establishes the proper context for considering Mr. Fleming's second argument. The sentencing court's statement that "the taxpayer has the burden of showing the right to a refund" did not shift the burden of proof. Rather, the statement was simply a shorthand way of stating that those taxpayers should have filed returns if they were entitled to a refund. Since none of the employed taxpayers filed legitimate returns in 1991 based upon their actual W–2s or employers, the district court obviously considered Mr. Fleming's objection frivolous and self-serving. The district court recognized that one who prepared fraudulent tax returns using bogus W–2s, dependents, and employers cannot get a sentencing windfall because some of the taxpayers involved might have received a refund if they had filed their own returns. We concur.

### III.

Mr. Fleming was convicted for transforming his legitimate accounting job into an intricate plan involving gullible citizens, false records, and fictional employers. He intended the United States Treasury to pay all of the fraudulent tax returns he prepared. That was his design. The IRS discovered his scheme before the intended loss became actual. He now requests a reduction in his sentence as a result of the lawful employment and legitimate income of those he duped. Yet those working taxpayers, not Mr. Fleming, deserve the benefit of any legally earned tax refund. We therefore find Mr. Fleming intended to inflict the total loss at issue and affirm the district court's calculation of his sentence.