**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Loyd Wayne POOLE, Defendant–Appellant.**

**No. 99–6653.**

United States Court of Appeals, Sixth Circuit.

Feb. 7, 2001.

Before DAUGHTREY and GILMAN, Circuit Judges; COLLIER, District Judge.*

* The Honorable Curtis L. Collier, United States District Judge for the Eastern District of Ten-

GILMAN, Circuit Judge.

Loyd Wayne Poole appeals, for the second time, the sentence he received after pleading guilty to fraudulently receiving social security benefits and making a false statement to the Social Security Administration (SSA). On the first appeal, this court remanded the case for resentencing after determining that the evidence presented by the government was insufficient to support a finding that the SSA's net loss was $23,005.00. Upon remand, the SSA provided detailed proof that its net loss was in fact $23,005.80. The district court then resentenced Poole to twelve months and a day in prison, imposed two years of supervised release, and ordered restitution in the amount of the SSA's net loss, all of which was essentially the same as in his original punishment. Poole now appeals his sentence once again, arguing that the amount of restitution ordered by the court was too high. For the reasons set forth below, we AFFIRM the judgment of the district court.

## I. BACKGROUND

In 1970, Loyd Poole assumed the identity of his late brother, Donnie Poole, in order to avoid garnishments for unpaid child support that has prevented him from maintaining steady employment. Donnie Poole had died in 1963 at the age of 19. After Loyd Poole was disabled in a car accident in 1982, he applied for and collected $1,231.54 in supplemental Social Security income (SSI) from July of 1982 to December of 1983 under the name of Donnie Poole. Loyd Poole also applied for disability benefits as Donnie Poole, collecting a total of $101,330.86 from the SSA between February of 1983 and April of 1996.

nessee, sitting by designation.

In 1981, Loyd Poole married Marie Poole. As a result of Loyd Poole's disability, Marie Poole received a total of $27,950.00 in Social Security benefits from March of 1984 to May of 1993. His dependent children – Mark D. Poole, Ernest D. Smith, and Joan L. Smith received $64,970.00 in Social Security benefits from September of 1983 to June of 1997 for the same reason. During this entire period, Loyd Poole continued using his deceased brother's identity.

Loyd Poole went back to work in 1988, this time under his own name. He was injured on the job, however, after only six months of work. Subsequently, he applied for and received a total of $39,266.40 in SSI benefits from April of 1988 to September of 1997 using his true identity. During most of this period, however, Loyd Poole was also drawing disability benefits under his brother's name. These years of "double dipping" are the cause of virtually all of the SSA's net loss. On May 1, 1996, Loyd Poole admitted to the SSA that he had been receiving SSI checks payable to himself since 1988, and that he had also been receiving disability benefits payable to Donnie Poole.

Loyd Poole was indicted for and pled guilty to fraudulently receiving Social Security benefits and making a false statement to the SSA. In the plea agreement, he reserved the right to oppose the government's calculation of its loss. The SSA credited Loyd Poole with the amount of benefits that he and his family would have received had he filed his original claim in 1983 using his true identity, rather than his brother's identity, and determined that the amount of its net loss was $23,005.00. The district court accepted this determination without requiring detailed proof from the government. Because the loss exceeded a $20,000.00 breakpoint established in the sentencing guidelines, one additional level was added to Loyd Poole's guidelines offense level. *See* U.S.S.G. § 2F1.1(b)(1)(E). This enhancement produced an adjusted offense level of 12, which in turn meant that the minimum length of imprisonment prescribed by the applicable sentencing table of the guidelines manual was 12 months. The district court subsequently sentenced Loyd Poole to the guideline minimum of 12 months in prison, imposed 2 years of supervised release, and ordered restitution in the amount of the $23,005.00 loss to the SSA.

On appeal, this court remanded the case for resentencing on the grounds that the "record contains no appropriate justification for the use of the loss figure used by the probation officer as a starting point for his calculations...." *United States v. Poole*, No. 98–6606, 1999 WL 644147, at *1 (6th Cir. Aug. 16, 1999). Upon remand, the district court held a resentencing hearing. This time the government presented testimony from Jerry Myatt, the District Manager of the Bowling Green Social Security Office, to support its argument that the appropriate amount of loss and restitution should be $23,005.80. The district court accepted the government's figure. Poole's adjusted offense level was again found to be 12, and he was sentenced to 12 months and a day in prison, together with a 2–year term of supervised release and restitution in the amount of $23,005.80. This appeal followed.

## II. ANALYSIS

The crux of this case involves the district court's finding that Loyd Poole owed $23,005.80 in restitution. This finding affects not only the amount that Loyd Poole owes to the government, *see* 18 U.S.C. § 3663(b)(1) and U.S.S.G. § 5E1.1, but also his sentencing. A loss of less than $20,000.00 would have reduced his offense level by one, giving him a sentencing range

of 10 to 16 months, rather than a minimum of 12 months, and would have made him eligible for home detention for up to half of his sentence. *See* U.S.S.G. § 2F1.1(b)(1)(E).

██ We will not set aside a district court's findings of fact from a sentencing hearing unless the findings are clearly erroneous. *See United States v. Moored*, 38 F.3d 1419, 1423 (6th Cir.1994). Restitution awards are upheld unless the district court abused its discretion in making the award. *See United States v. Scott*, 74 F.3d 107, 110 (6th Cir.1996). Although the government has the burden of proving the amount of restitution by a preponderance of the evidence, the district court's findings as to the amount of restitution will be upheld on appeal unless "outside the universe of acceptable computations." *United States v. Fleming*, 128 F.3d 285, 287 (6th Cir.1997) (internal quotation marks and citations omitted). In making its findings, a court may rely on information contained in a presentence report so long as the information is reasonably reliable and the court expressly adopts the information in question as its findings. *See United States v. Mandell*, 905 F.2d 970, 974 (6th Cir.1990).

██ Here, as opposed to the record on the first appeal, the district court's findings were clearly derived from substantial evidence presented at the resentencing hearing. Jerry Myatt, the District Manager of the Bowling Green Social Security Office, explained that the restitution figure was calculated by taking the total amount of benefits fraudulently received by Loyd Poole and his family under his brother's name and subtracting out the amount of benefits to which they were legally entitled. (JA 63) The loss calculations were summarized in a chart presented by the government. (*See* Loss Calculations According to United States Probation Office, JA 114)

Regarding Loyd Poole himself, Myatt testified that Poole received $101,336.86 in disability benefits and $1,231.54 in SSI benefits under the name of his brother – a total of $102,562.40. (JA 64) From this, the SSA subtracted $85,203.60 – the total benefit that was legitimately due to Loyd Poole – in order to arrive at the amount of restitution owed. (JA 63) This sum of $85,203.60 was calculated by taking the $129,284.00 that Poole was properly entitled to in disability benefits (JA 66) and subtracting $39,266.40 that he was overpaid in SSI benefits (JA 67) and $4,814.00 that he was overpaid in medical insurance premiums. (JA 68) According to these figures, the amount of restitution attributable to Loyd Poole was $17,358.80 ($102,562.40 minus $85,203.60).

With regard to Loyd Poole's wife, Marie Poole, Myatt testified that she received $27,950.00 in benefits under Loyd Poole's fraudulent claim that utilized his brother's name. (JA 65) From this amount, $16,117.00 – the total benefit that was legitimately due to Marie Poole was subtracted in order to arrive at the amount of restitution attributable to her. The $16,117.00 in total benefits to which Marie Poole was legitimately entitled was in turn calculated by taking the $17,151.00 that she properly received in disability benefits (JA 68–69) and subtracting $1,034.00 that she was overpaid in SSI benefits. (JA 68) According to these figures, the net amount of restitution attributable to Marie Poole was $11,833.00 ($27,950.00 minus $16,117.00).

Finally, Myatt testified that Loyd Poole's children received a total of $64,970.00 in benefits based on Loyd Poole's fraudulent use of Donnie Poole's identity. (JA 65) From this amount, $71,156.00 the total payments legitimately due to the children – was subtracted in

order to arrive at the amount of restitution attributable to them. (JA 69) Because the children were paid *less* than the amount to which they were actually entitled, a total of $6,186.00 ($71,156.00 minus $64,970.00) was subtracted from the restitution attributable to Loyd Poole ($17,358.80) and Marie Poole ($11,833.00). This led to the ultimate figure of $23,005.80 owed by Loyd Poole for benefits fraudulently received by himself and his family.

Loyd Poole raises three challenges to the calculated figure. First, he asserts that inconsistencies between the amount of loss calculated by the United States Attorney's Office and the United States Probation Office bring the final figure into question. For appeals of sentence enhancements based upon the amount of loss caused by fraud, however, "the loss need not be determined with precision. The court need only make a reasonable estimate of the loss, given the available information." U.S.S.G. § 2F1.1, cmt. n. 9. Based on the amount of detail provided in the resentencing testimony and report, we find that the district court far exceeded its obligation to make a reasonable estimate of the loss.

Poole next argues that the government's previous calculation of a higher loss figure in the amount of $25,194.00 led to such confusion at resentencing that the district court clearly erred in its decision. This disparity, however, was adequately clarified in the presentence report. The report explained that the government had mistakenly failed to subtract the $2,189.00 in benefits for which Mark D. Poole was underpaid. Subtracting $2,189.00 from $25,194.00 leads to a loss of $23,005.00, the amount for which Loyd Poole was initially found liable.

Finally, Poole challenges the use of $11,833.00 as the figure for overpayments to Marie Poole. He submitted a report prepared by the SSA in March of 1998 that, according to Poole, states that "Marie Poole's overpayments amounted to only $7,836.00." Appellant's Br. at 19 (emphasis omitted). During the resentencing hearing, however, Loyd Poole himself testified that "[the figure] was the net on her and her two children. I had a son that wasn't included in this." (JA 97) This testimony is supported by the fact that Marie Poole's overpayment ($11,833.00), minus the underpayments to Earnest D. Smith ($3,411.00) and Joan L. Smith ($586.00), equals $7,836.00. Consequently, we find no inconsistency between the report and the accepted loss calculations.

## III. CONCLUSION

For all the reasons stated above, we AFFIRM the judgment of the district court.