**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Arthur JENNINGS, Defendant–
Appellant.**

No. 01–5439.

United States Court of Appeals,
Sixth Circuit.

April 2, 2001.

Before MOORE, COLE, and FARRIS,[*] Circuit Judges.

### ORDER

Arthur Jennings, a federal prisoner proceeding pro se, appeals his conviction and sentence for interstate transportation of stolen freight in violation of 18 U.S.C. §§ 659 and 2. This case has been referred to a panel of the court pursuant to Rule 34(j)(1), Rules of the Sixth Circuit. Upon examination, this panel unanimously agrees that oral argument is not needed. Fed. R.App. P. 34(a).

Jennings, an interstate trucker, was indicted on August 31, 1999, on the single count described above. While stopped in Memphis, Tennessee, he had stolen and permitted others to steal, in exchange for money and crack cocaine, frozen chickens and frankfurters from the refrigerated trailer he was taking cross country. Jennings filed motions to suppress evidence and to dismiss the indictment, both of which were denied following a hearing. A jury convicted Jennings on December 6, 2000. In his motion for a new trial, Jennings offered as new evidence a weight ticket from a scale approximately 1000 miles from Memphis. Jennings claimed it proved he could not have been in Memphis as early as some trial witnesses said he was. The motion for a new trial was denied and Jennings was sentenced on March 23, 2001, to 15 months in prison followed by three years of supervised release. The court also ordered restitution in the amount of $16,295.40. The district court's judgment was entered on April 2, 2001. Counsel timely filed a notice of appeal and both the district court and this

---

[*] The Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit, sitting by designation.

court granted counsel's subsequent motions to withdraw. Jennings was granted leave to proceed pro se on appeal.

On appeal, Jennings argues that: (1) his rights under the Speedy Trial Act (STA) and the Interstate Agreement on Detainers (IAD) were violated; (2) the district court's comments to a potential juror intimidated others in the jury pool; (3) the district court erred in finding that Sgt. Borgers did not interrogate him; (4) the prosecutor improperly vouched for the credibility of witnesses and expressed his personal opinion during rebuttal argument; (5) Sgt. Hanks's testimony, consisting of prejudicial hearsay, was erroneously admitted; (6) the district court erred in instructing the jury on the burden of proof; (7) trial counsel rendered ineffective assistance; (8) his criminal history score and the amount of loss were erroneously calculated; (9) the district court erred in not giving a jury instruction regarding eyewitness testimony; (10) the district court erred in denying his request for self-representation; (11) the district court improperly denied his motion for a new trial; and (12) the prosecutor knowingly presented perjured testimony. Jennings has also filed motions to include the transcript of grand jury testimony and transcript of his state court trial in the record on appeal, and to vacate and remand for consideration of his new trial motion.

Upon review, we deny the pending motions and affirm the district court's judgment because none of the issues raised by Jennings constitutes reversible error.

■ Jennings first argues that his conviction violated his rights under the Speedy Trial Act and the Interstate Agreement on Detainers. Both issues are reviewed *de novo* on appeal, although the district court's findings of fact are reviewed for clear error. *United States v.*

*Murphy,* 241 F.3d 447, 453 (6th Cir.), *cert. denied,* 532 U.S. 1044, 121 S.Ct. 2013, 149 L.Ed.2d 1014 (2001) (STA); *Olden v. United States,* 224 F.3d 561, 565 (6th Cir.2000) (IAD). These claims are based on his pretrial detention in Shelby County Jail from October 18, 1999, when all state charges were dismissed, until February 17, 2000, when the jail finally notified U.S. Marshals that they were releasing Jennings. The district court did not err in finding that neither the STA nor the IAD are applicable to Jennings's case.

Jennings also charges that "a certain statement made by the trial judge frightened the venire into silence, that the dumbed [sic] panel made meaningless the limited Voir Dire of the judge." The district court's conduct during trial is reviewed for an abuse of discretion. *United States v. Middleton,* 246 F.3d 825, 849 (6th Cir.2001). There was no abuse of discretion in this case. Because the statements by the judge were made outside of the hearing of the rest of the jury, they could not possibly have "frightened them into silence." In fact, prospective jurors continued to respond to voir dire questions posed by the judge and the attorneys.

■ Jennings asserts that the district court erred in finding that he was not under arrest and that Sgt. Borgers did not interrogate him for purposes of his motion to suppress. This court reviews a district court's factual findings relating to a motion to suppress evidence for clear error and its legal conclusions *de novo*. *United States v. Heath,* 259 F.3d 522, 527 (6th Cir.2001). Furthermore, the evidence is reviewed " 'in the light most likely to support the district court's decision.' " *Id.* at 528 (quoting *United States v. Navarro–Camacho,* 186 F.3d 701, 705 (6th Cir.1999)).

Under the circumstances of this case, Sgt. Borgers was justified in briefly stop-

ping Jennings and making reasonable inquiries, *see United States v. Cortez*, 449 U.S. 411, 417–18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), particularly where Jennings voluntarily attempted to persuade officers that he was the *victim*, rather than the perpetrator, of a crime. Once it became clear that Jennings could provide no details to support his claim that he was knocked out and robbed, Borgers ceased the questioning and arrested Jennings. The district court did not err in concluding that no warnings under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), were required to make the initial inquiries because the questions did not constitute an interrogation within the meaning of *Miranda*. "Interrogation" for purposes of that decision, is defined as any words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response. *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). Here, Jennings' voluntary statement that he was the victim of a theft invited the follow-up questions and is properly deemed to have been obtained independent of any interrogation. *See Id.* at 300–01, 100 S.Ct. 1682; *United States v. Avery*, 717 F.2d 1020, 1025 (6th Cir.1983).

■ Jennings also raises two alleged incidents of prosecutorial misconduct. This court utilizes the test for such claims set forth in *United States v. Francis*, 170 F.3d 546, 549–50 (6th Cir.1999). Jennings first complains that the prosecutor improperly vouched for the credibility of unspecified witnesses. However, there was no contemporaneous objection and the transcript pages he cites do not include any statements where the prosecutor personally vouched for the credibility of any government witness. The closest statement is found on page 672, where the prosecutor, speaking of Joe Jackson and the two prostitutes, states: "There is no evidence these witnesses weren't telling the truth." This statement constitutes permissible comment on the evidence.

■ Jennings also charges that the prosecutor expressed his personal opinion as to Jennings' guilt, although without citing a particular portion of the record. Again, there was no contemporaneous objection, so this court reviews the issue only for plain error. Here, the prosecutor extensively cited the evidence presented in order to persuade the jury of Jennings' guilt. There is no reversible error.

Jennings next claims that the district court erred in admitting prejudicial hearsay testimony of Sgt. Hanks, citing to pages 556–57 of the trial transcript. Because there was no objection to the testimony, Jennings can prevail only if the admission of the evidence was plainly erroneous and affected his substantial rights so as to result in a miscarriage of justice. *See United States v. Evans*, 883 F.2d 496, 498 (6th Cir.1989). The pages cited by Jennings merely record Sgt. Hanks's testimony regarding his efforts to locate a missing witness, Darren Reed. Jennings fails to show how this is hearsay or how it prejudiced his defense. This issue is completely meritless.

■ Next, Jennings complains that the district court shifted the burden of proof and, in essence, directed the jury to find him guilty during preliminary jury instructions. This court "will reverse a judgment based upon an improper jury instruction 'only if the instructions, viewed as a whole, were confusing, misleading, or prejudicial.'" *United States v. Beaty*, 245 F.3d 617, 622 (6th Cir.) (quoting *United States v. Harrod*, 168 F.3d 887, 892 (6th Cir. 1999)), *cert. denied*, —— U.S. ——, 122 S.Ct. 216, 151 L.Ed.2d 154 (2001).

The statement of which Jennings now complains took place very early during the jury selection process: "The purpose of this trial is to determine whether the government can meet and does in this case, in fact, when we hear all the evidence, does meet that burden." (Trial Tr. at 18). While the concept might have been expressed a bit more clearly, the district court was obviously instructing the jury that the purpose of the trial was to determine, after hearing all of the evidence, whether the government met its burden of proving the defendant guilty of every element of the indictment. The statement immediately preceding the one already quoted was: "[T]he defendant is presumed to be innocent. Therefore, the government has the burden of proving each of the essential elements of the offense charged in the indictment beyond a reasonable doubt." (Trial Tr. at 18). The court reemphasized the government's burden later, after the jury was chosen.

Because there was no objection made to the court's instruction, it is reviewed for plain error. *United States v. McGee*, 173 F.3d 952, 957 (6th Cir.1999). There is no error in this case. The district court properly placed the burden of proof upon the government and instructed the jury that it was to decide whether the government met that burden after hearing the evidence to be presented.

■ Jennings asserts that defense counsel did not effectively cross-examine witnesses, failed to subpoena records from the trucking company with which he was employed at the time of the offense, and failed to object to unfairly prejudicial evidence and prosecutorial misconduct. As a general rule, ineffective assistance of counsel claims are not cognizable on direct appeal because the record is inadequate to permit review; hence, they are more properly brought in a motion to vacate under

28 U.S.C. § 2255. *See, e.g., United States v. Tucker*, 90 F.3d 1135, 1143 (6th Cir. 1996). We decline to depart from the general rule in this case.

Jennings next argues that the district court erred in assessing two criminal history points for a California conviction and in sentencing him according to a $40,000 loss, when the actual property lost was valued at $16,000. "When reviewing the calculation of sentences, [this court] review[s] the district court's factual findings for clear error." *Murphy*, 241 F.3d at 458. "Questions involving the interpretation of the guidelines are legal questions that this Court reviews *de novo*." *Id.*

■ The district court did not err in assessing two criminal history points for Jennings' state trespassing conviction. That assessment was made pursuant to USSG § 4A1.1(b), which provides that two points be counted "for each sentence of imprisonment of at least sixty days...." Jennings claims that he should have been assessed only one point because he was incarcerated only 23 days for that offense. It is undisputed that the sentence as imposed, however, was for 60 days of incarceration. This court has recently held that, "[i]f Defendant has served a portion of the sentence, then for purposes of calculating a defendant's criminal history category, the focus is the actual sentence pronounced, not the length of time actually served." *Murphy*, 241 F.3d at 459. The district court properly relied upon *Murphy* in assessing two criminal history points for this sentence.

■ This court reviews the district court's factual finding of loss under a clearly erroneous standard. *United States v. Kohlbach*, 38 F.3d 832, 841 (6th Cir. 1994). The calculation of loss under the sentencing guidelines is reviewed *de novo*. *United States v. Fleming*, 128 F.3d 285, 287 (6th Cir.1997). The applicable guide-

line for theft of property is USSG § 2B1.1. Subsection (b)(1) provides for graduated increases in offense level for the amount of loss. The district court sentenced Jennings under § 2B1.1(b)(1)(G), which assigns a six-level increase where the loss is more than $20,000 but not more than $40,000. The district court based this determination on the total value of the meat in the truck, which was found to be $40,000. Jennings, on the other hand, argues that the increase should be only five levels, pursuant to subsection (b)(1)(F). He bases his assertion on the fact that only four pallets of meat, worth approximately $16,000, were missing when he was apprehended.

We conclude that the district court did not clearly err when it found that Jennings stole the entire shipment and would have sold it but for the interruption of the police. The evidence showed that Jennings diverted the truck in order to stop in Memphis, broke the seal on the trailer, and gave the keys to the owner of a crack house so that he and others could sell the frozen meat in exchange for drugs. Moreover, the district court properly applied the loss guideline for the entire shipment. *See* USSG § 2B1.1, comment. (n.2) ("'Loss' means the value of the property *taken,* damaged, or destroyed.... *Examples:* ... (2) In the case of a defendant apprehended taking a vehicle, the loss is the value of the vehicle *even if the vehicle is recovered immediately"*) (emphases added). "The fact that good police work diminished the actual loss to the employer victim should not affect the determination of the extent of defendants' culpability and responsibility for purposes of sentencing." *United States v. Westmoreland,* 911 F.2d 398, 399 (10th Cir.1990).

■ Jennings also argues that the district court erred in not giving a jury instruction on eyewitness testimony. Where the defendant fails to object to the jury instructions as given, this court reviews for plain error. *McGee,* 173 F.3d at 957.

Jennings claims that the court should have *sua sponte* given an instruction on the weaknesses inherent in eyewitness identification testimony. He relies upon *United States v. Telfaire,* 469 F.2d 552, 558–59 (D.C.Cir.1972), which held that the jurors should be instructed that they must be satisfied beyond a reasonable doubt of the accuracy of the identification of the defendant and that, in so doing, they should consider certain factors. *See United States v. Tipton,* 11 F.3d 602, 606 (6th Cir.1993); *United States v. Scott,* 578 F.2d 1186, 1191 (6th Cir.1978).

This court has approved the *Telfaire* instruction, but has also held that giving the instruction is a matter of discretion for the trial court, at the same time stressing that it should be given "'when the issue of identity is crucial, *i.e.,* either where no corroboration of the testimony exists, or where the witness' memory has faded by the time of trial, or where there was a limited opportunity for observation.'" *Tipton,* 11 F.3d at 606 (quoting *Scott,* 578 F.2d at 1191)); *see also United States v. Boyd,* 620 F.2d 129, 131–32 (6th Cir.1980). There is no danger of misidentification in this case. Due process does not require that the jury be instructed on eyewitness testimony where, as here, the government's case rests on the testimony of more than one witness. *See United States v. Thoma,* 713 F.2d 604, 607 (10th Cir. 1983). Instead, defense counsel's cross-examination of the witnesses and his closing argument made the jury aware of the weaknesses of the testimony of certain witnesses. *See Tipton,* 11 F.3d at 608. Accordingly, the district court did not abuse its discretion in failing to *sua sponte* instruct the jury on eyewitness identification.

Nor did the district court err in denying Jennings' request to represent himself.

The appellee claims that Jennings never asked to represent himself prior to trial and that his only request was to represent himself on appeal, a request which was granted. However, while the record does not show that Jennings asked to represent himself *at trial*, he did request the district court to allow him to represent himself *at sentencing*. The court denied that request.

When evaluating a district court's denial of a defendant's request to proceed pro se, this court reviews the district court's finding of fact for clear error; the legal question of whether a constitutional violation occurred is reviewed *de novo*. *United States v. Mackovich*, 209 F.3d 1227, 1236 (10th Cir.), *cert. denied*, 531 U.S. 905, 121 S.Ct. 248, 148 L.Ed.2d 179 (2000). An accused will be permitted to represent himself only when he knowingly and intelligently relinquishes the right to counsel. *United States v. Martin*, 25 F.3d 293, 295 (6th Cir.1994). Our review of the hearing transcripts satisfies us that the district court did not err in denying Jennings' request to represent himself at sentencing.

Nor did the district court abuse its discretion in denying Jennings' motion for a new trial pursuant to Fed.R.Crim.P. 33 based upon newly-discovered evidence. *United States v. Hartsel*, 199 F.3d 812, 815 (6th Cir.1999); *United States v. Frost*, 125 F.3d 346, 382 (6th Cir.1997). A defendant requesting a new trial must demonstrate that: (1) the new evidence was discovered after trial; (2) the evidence could not have been discovered earlier with due diligence; (3) the evidence is material and not merely cumulative or impeaching; and (4) the evidence would likely produce an acquittal. *Frost*, 125 F.3d at 382. Jennings can satisfy none of the four requirements.

Finally, Jennings complains that the prosecutor knowingly presented perjured testimony. The knowing use of perjured testimony constitutes a denial of due process if there is a reasonable likelihood that the false testimony could have affected the verdict. *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir.1989). The appellant must show that the statement was false, the statement was material, and the prosecution knew it was false. *United States v. O'Dell*, 805 F.2d 637, 641 (6th Cir.1986). Jennings bears the burden of showing that the testimony was perjured. *See United States v. Griley*, 814 F.2d 967, 971 (4th Cir.1987). Our examination of the record shows that Jennings failed to establish the knowing use of perjury in this case.

Because none of the issues raised by Jennings warrants relief, the district court's judgment, entered on April 2, 2001, is affirmed. The pending motions are denied.